FRICKER, APPELLEE, *v.* STOKES, SHERIFF, APPELLANT.

[Cite as Fricker *v.* Stokes (1986), 22 Ohio St. 3d 202.]

(No. 85-1177—Decided March 12, 1986.)

*Kircher & Phalen* and *Robert B. Newman,* for appellee.

*Arthur M. Ney, Jr.,* prosecuting attorney, and *James W. Harper,* for appellant.

CLIFFORD F. BROWN, J. The sole issue raised by this appeal is whether the trial court properly directed a verdict against DeAnna Fricker at the close of her evidence. Appellant Sheriff Lincoln Stokes maintains that he is entitled to a directed verdict in an action alleging an unconstitutional strip search where (1) the subject of the strip search conducts herself so as to later be found guilty of disorderly conduct, (2) the subject will come into contact with the general jail population, (3) the subject's confinement is lawful, (4) the search is visual only and conducted by female deputies in a private setting, and (5) there was no proof of unwarranted offensive behavior on the part of the deputies. On the other hand, Fricker would require that, to justify the strip search of a detainee on a minor misdemeanor or traffic offense, the sheriff must have probable cause to believe that the subject of the search is concealing a weapon, contraband, or other evidence, as well as a legitimate institutional security interest. Neither proposition is entirely correct.[1]

---

[1] We note that, although not applicable to the case at bar, R.C. 2933.32, effective April 4, 1985, now requires that an officer have probable cause to believe that a person is concealing evidence in order to conduct a lawful strip search or body-cavity search. In pertinent part, that statute provides:

"(B)(1) Except as authorized by this division, no law enforcement officer, other employee of a law enforcement agency, physician, or registered nurse or licensed practical nurse shall conduct or cause to be conducted a body cavity search or a strip search.

"(2) A body cavity search or strip search may be conducted if a law enforcement officer or employee of a law enforcement agency has probable cause to believe that the person is concealing evidence of the commission of a criminal offense, including fruits or tools of a crime, contraband, or a deadly weapon, as defined in section 2923.11 of the Revised Code, that could not otherwise be discovered. In determining probable cause for purposes of this section, a law enforcement officer or employee of a law enforcement agency shall consider the nature of the offense with which the person to be searched is charged, the circumstances of the person's arrest, and, if known, the prior conviction record of the person.

"(3) A body cavity search or strip search may be conducted for any legitimate medical or hygienic reason.

"(4) Unless there is a legitimate medical reason or medical emergency justifying a warrantless search, a body cavity search shall be conducted only after a search warrant is issued that authorizes the search. In any case, a body cavity search shall be conducted under sanitary conditions and only by a physician, or a registered nurse or licensed practical nurse, who is registered or licensed to practice in this state.

"(5) Unless there is a legitimate medical reason or medical emergency that makes obtaining written authorization impracticable, a body cavity search or strip search shall be conducted only after a law enforcement officer or employee of a law enforcement agency obtains a written authorization for the search from the person in command of the law enforcement agency, or from a person specifically designated by the person in command to give a written authorization for either type of search.

"(6) A body cavity search or strip search shall be conducted by a person or persons who are of the same sex as the person who is being searched and the search shall be conducted in a manner and in a location that permits only the person or persons who are physically conducting the search and the person who is being searched to observe the search.

"* * *

"[(D)](3) If a person is subjected to a body cavity search or strip search in violation of this section, any person may commence a civil action to recover compensatory damages for

The landmark case as to the constitutionality of strip searches is *Bell v. Wolfish, supra,* in which the United States Supreme Court held that, although the institution need not have probable cause in the technical sense before conducting a strip search, courts must balance the need for the particular search against the invasion of personal rights that the search entails. Noting that "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application * * *," *id.* at 559, the United States Supreme Court stated that in striking the balance, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id. Wolfish* dealt with whether visual body-cavity searches "*can ever* be conducted on less than probable cause." (Emphasis *sic.*) *Id.* at 560. The court found that they could, but emphasized that the constitutionality of such an intrusion must be determined on a case-by-case basis.[2]

The court of appeals below concluded that the required balancing test could not have been properly employed by the trial court under the state of the record in the matter *sub judice* because, since defendant's motion for a directed verdict was granted at the close of Fricker's evidence, there was "absolutely no evidence in the record regarding any possible significant and legitimate security interests of the CCI." We agree.

Civ. R. 50(A)(4) requires that, in considering a motion for a directed verdict, the trial court must construe the evidence most strongly in favor of the party against whom the motion is directed, and sustain the motion only upon a finding that reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party. On the facts of this case as portrayed in Fricker's evidence, and construing the evidence in her favor, the court of appeals correctly found that reasonable minds could easily conclude that Fricker's strip search was performed simply "as a matter of policy or as a crude and insensitive means to humiliate or dehumanize * * * [Fricker] for some perceived affront arising from her protestations of innocence."

---

any injury, death, or loss to person or property or any indignity arising from the violation. In the civil action, the court may award punitive damages to the plaintiffs if they prevail in the action, and it may award reasonable attorney's fees to the parties who prevail in the action.

"(4)  This section does not apply to body cavity searches or strip searches of persons who have been sentenced to serve a term of imprisonment and who are serving that term in a detention facility, as defined in section 2921.01 of the Revised Code.

"(E)(1)  Whoever violates division (B) of this section is guilty of conducting an unauthorized search, a misdemeanor of the first degree.

"(2)  Whoever violates division (C) of this section is guilty of failure to prepare a proper search report, a misdemeanor of the fourth degree."

[2] Alleged Fourth Amendment violations are routinely adjudged only on a case-by-case basis. See *Terry* v. *Ohio* (1968), 392 U.S. 1 [44 O.O.2d 383]; *Sibron* v. *New York* (1968), 392 U.S. 40 [44 O.O.2d 402].

Indeed, on the state of this record it is difficult to imagine what possible justification may exist for this particular strip search, since Fricker was never questioned as to whether she was concealing any sort of contraband, was never patted down, and her clothes were never searched even after they were removed. Even if Fricker had been concealing contraband,[3] on this record it would require a quantum leap in logic to conclude that any such contraband would not be concealed in clothing, but rather would be routinely carried within a body cavity. Further, Fricker testified that even when she squatted in response to the matron's demand, the matron looked at her in such a way that she could not possibly have effectively viewed anything below Fricker's waist. We must keep in mind that Fricker was originally stopped for speeding. The transporting officer informed C.C.I. personnel that Fricker had, to that point, been "cooperative" and "no problem." The lack of an effective and complete strip search certainly calls into question the institutional justification for the search. We conclude that where the plaintiff's evidence shows that a strip search was conducted without any apparent legitimate and substantial institutional justification, the trial court errs by directing a verdict in favor of the defendant as to the constitutionality of that strip search.

As an aside, we question the manner in which the search was conducted. While we certainly recognize that some detainees may by prior experience or otherwise be cognizant of the purposes of the removal of jewelry and of a strip search, where, as here, the subject of that search had never before experienced such a process, it seems reasonable that she would question the need for such intrusions, even if the intrusions were otherwise justified. The refusal of C.C.I. personnel to provide any explanation whatsoever in response to Fricker's questions may have heightened her panic and, indeed, may explain some of Fricker's behavior.

Accordingly, we affirm the judgment of the court of appeals and remand this cause to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed*
*and cause remanded.*

CELEBREZZE, C.J., SWEENEY, LOCHER and HOLMES, JJ., concur.

WRIGHT, J., concurs separately in the syllabus and judgment only.

DOUGLAS, J., dissents.

WRIGHT, J., concurring. I write separately to concur because I believe that the majority has, in its very appropriate concern for the humiliating

---

[3] The record does not reveal that contraband of any sort was found as the result of Fricker's search.

experience DeAnna Fricker was forced to endure, lost sight of the narrow issue before this court. We must only determine whether Fricker presented evidence sufficient to withstand defendant's motion for directed verdict. After determining that Fricker has met this burden, we should not assess the justification — or lack thereof — for this particular search until the defendant has presented his evidence.

The United States Supreme Court has established a test of reasonableness for strip-search cases, requiring "a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell* v. *Wolfish* (1979), 441 U.S. 520, 559. Because of the nature of her unexpected arrest, her status as a temporary detainee and the nature of the underlying crime, Fricker presented sufficient evidence under the *Bell* test to require the defendant to justify the search.

Situations do occur in which such searches are justifiable. Courts should be mindful of the dangerous conditions that exist in detention facilities and the need for strong security measures. *Block* v. *Rutherford* (1984), 468 U.S. ___, 82 L. Ed. 2d 438; *Bell, supra.* Corrections officers have professional expertise in dealing with such situations and deference must be given to their decisions, as long as those decisions do not lead to improper invasions of personal rights. *Block, supra*; *Bell, supra.*

Without evidence in the record as to the nature of defendant's strip-search policy and the justification for this particular search, I think it improper to speculate as to the existence of a violation of constitutional proportions.