PRICE, APPELLANT, *v.* CLEVELAND CLINIC FOUNDATION ET AL., APPELLEES.

(No. 51222 — Decided
December 15, 1986.)

*Carl J. Character,* for appellant
Bertha Price.

*Arter & Hadden, David Maddox,
George F. Gore* and *Anthony J.
Damelio, Jr.,* for appellees Cleveland
Clinic Foundation and John W. King.

MARKUS, C.J. The plaintiff contends that the defendants negligently performed blood grouping tests for a paternity case and wrongly reported that she was not her child's mother. When she rested, the trial court granted motions by the defendant hospital and the defendant physician for a directed verdict, and dismissed her case. The court reasoned that she failed to prove negligence because her sole liability expert lacked qualifications to testify on liability issues for a "medical claim." See Evid. R. 601(D); R.C. 2743.43(A).

On appeal, the plaintiff argues that her evidence presented a submissible case. She also challenges the court's exclusion of additional expert witnesses, its rejection of exhibits as hearsay, and its denial of a mistrial.[1] We conclude that her case did not assert a "medical claim" within the meaning of R.C. 2305.11(D)(3), so her expert's testimony properly supported her suit. Since the total evidence precluded a directed verdict, we reverse and remand for a new trial. Her remaining contentions lack merit.

## I

The plaintiff's complaint purports to state two separate causes of action. The first claims that "the defendants failed to exercise the degree of care that hospitals and physicians of similar training and in similar communities are required to exercise in like circumstances." The second alleges the defendants "were negligent and failed to exercise that degree of ordinary care and skill owed to its patients, in general and plaintiff in particular." Both arise from the same allegedly incorrect blood grouping report. Both aver that the report caused her "irreparable, extreme, and severe emotional distress and physical pain which required medical attention."

At the trial, undisputed evidence established that the plaintiff had filed a paternity action in the juvenile court. The juvenile court ordered the plaintiff, the putative father, and the child to submit blood samples for grouping analysis by the defendant hospital. Under the supervision of the defendant physician as a hospital employee, the hospital staff took samples of their blood and performed laboratory analyses. The defendant reported to the juvenile court and to the plaintiff that the studies excluded both the putative father and the plaintiff as parents of this child.

Approximately ten months later, the plaintiff presented herself and the child for retesting by the American Red Cross Forensic Genetics Laboratory. That laboratory found that their blood samples were compatible. Two months later, she again presented herself and the child to the defendant

---

[1] The plaintiff's eight assignments of error are set forth in the Appendix. Some of them mistakenly assert legal contentions, rather than challenging procedural rulings. See *North Coast Cookies, Inc.* v. *Sweet Temptations, Inc.* (1984), 16 Ohio App. 3d 342, 343-344, 16 OBR 391, 393, 476 N.E. 2d 388, 391. We shall consider her assignments as they relate to the rulings which she challenges.

hospital for retesting. This time, the hospital and the defendant physician reported that the plaintiff's blood was genetically compatible with the child's blood.

The plaintiff supported her liability claims with testimony from the defendant physician and her own expert witness. The defendant physician acknowledged that he and the hospital had not complied with certain recommended procedures. He agreed with a statement from a recognized text that proper blood grouping analysis should never produce an error. He did not testify that he or the hospital staff acted negligently or failed to exercise the care which reasonable persons exercise in that activity. He did not state that any negligence proximately caused an erroneous report.

The plaintiff's expert held a Ph.D degree in biochemistry and pharmacology. He was the Scientific Director of the Red Cross Forensic Genetics Laboratory. For nineteen years he had been associate head of clinical pathology at a local hospital. Prior to that, he had been director of the blood bank at a second local hospital for ten years. Earlier, he was director of the Rh laboratory at a third hospital for eight years, during which he was director of that hospital's main blood bank for three years.

The witness had performed approximately fourteen hundred fifty paternity blood grouping tests, and had published workshop manuals for training blood grouping analysts. He was one of twenty-five experts who developed the American Association of Blood Banks accreditation process for laboratories performing paternity blood testing. He had conducted seminars in this field with the defendant physician at the defendant hospital. Like the defendant hospital, he and his laboratory frequently performed blood grouping analysis for the same juvenile court. The defendant physician had referred the plaintiff to this witness when she requested retesting. He was not a physician.

In substance, this expert testified that the defendants were negligent. Although the court permitted the plaintiff's expert to testify over the defendants' objection, it later disregarded that testimony as legally incompetent for a "medical claim." In so ruling, the court expressly stated that the witness was "a recognized expert in the field of blood grouping."

## II

In determining the propriety of the directed verdict, we should first review the trial court's decision to disregard the plaintiff's expert. Evid. R. 702 provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Clearly, the plaintiff's expert satisfied general standards for a witness who may testify about reasonable care in blood grouping analysis. Indeed, the juvenile court recognized him as qualified to give expert testimony about blood grouping almost thirty years ago. See *State, ex rel. Steiger,* v. *Gray* (J.C. 1957), 76 Ohio Law Abs. 393, 395, 3 O.O. 2d 394, 395, 145 N.E. 2d 162, 163. However, the defendants persuaded the trial court that Evid. R. 601(D) supersedes Evid. R. 702 for this case. Evid. R. 601(D) provides:

"Every person is competent to be a witness except:

"* * *

"(D) A person giving expert testimony on the issue of liability in any claim asserted in a civil action against

a physician, podiatrist, or hospital arising out of the diagnosis, care or treatment of any person, unless the person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state, and unless such person devotes three-fourths of his professional time to the active clinical practice in his field of licensure, or to its instruction in an accredited university."

Evid R. 601(D) restates R.C. 2743.43(A), which precludes "expert testimony on the liability issues in a medical claim," unless the witness satisfies the same standards. For that purpose, R.C. 2305.11(D)(3) defines a "medical claim" as "any claim asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person." Thus, neither Evid. R. 601(D) nor R.C. 2743.43(A) applies here, unless the plaintiff's claim arises out of "the diagnosis, care, or treatment of any person."

The Supreme Court explained the purpose of these limitations on expert testimony, in *McCrory* v. *State* (1981), 67 Ohio St. 2d 99, at 103, 21 O.O. 3d 63, at 65, 423 N.E. 2d 156, at 159:

"* * *Hence, we conclude the statute deals with the basic unfairness of permitting the pointing of accusatory fingers by those who do not take care of the sick toward those who do. More specifically, we conclude that the purpose of the statute is to preclude testimony by the physician who earns his living or spends much of his time testifying against his fellows as a professional witness, and to prevent those whose lack of experiential background in the very field they seek to judge, the clinical practitioner, makes the validity of their opinions suspect, from expressing those opinions for pay or otherwise."

In ruling that these restrictions apply to expert testimony about negligence, but not about causation, the Tenth District Court of Appeals perceived their purpose in similar terms. See *Wise* v. *Doctors Hosp. North* (1982), 7 Ohio App. 3d 331, at 334, 7 OBR 427, at 431, 455 N.E. 2d 1032, at 1036:

"* * *The purpose of the restriction on expert testimony is to discourage, as far as possible, testimony regarding the proper standard of care by a 'professional witness' or a physician who is sequestered in his laboratory and has no first-hand knowledge of the daily care of patients. The physician who spends his entire professional time some place other than treating patients, or who is in great demand as a witness because he is recognized as an 'expert,' may indeed be the best witness to testify as to whether a particular action by the physician was the likely cause of the harmful condition. Daily patient care is not necessary to the accumulation of such knowledge. However, such a witness often has no knowledge about the norms of patient care and the standards of physician conduct appurtenant thereto."

The statute and the rule seek to prevent non-clinicians from testifying about the quality of clinical care. The critical phrase, "arising out of the diagnosis, care, or treatment of any person," describes clinical assistance for a patient. Blood grouping analysis for a paternity case does not constitute clinical assitance for anyone. Cf. *New York Central RR. Co.* v. *Wiler* (1931), 124 Ohio St. 118, 122-123, 177 N.E. 205, 206 (a negligent employment examination is not malpractice, because the physician does not undertake to treat the employee); *Durden* v. *American Hosp. Supply Corp.* (Fla. App. 1979), 375 So. 2d 1096 (limitations for suit "arising out of * * * diagnosis, treatment, or care" does not apply to blood donor's hepatitis case).

Rather, blood grouping analysis is an identification procedure, which non-physicians may accomplish as well as physicians. When the juvenile court ordered these tests, the statute permitted them to be made by "qualified physicians or other qualified persons * * * selected by the court." R.C. 2317.47. In fact, non-physicians perform a great majority of these tests. See Polesky & Krause, Blood Typing in Disputed Paternity Cases — Capabilities of American Laboratories (1976), 20 Fam. L. Q. 287, 293 (testing done by medical technicians in 92.3% of surveyed group, with confirmation by physicians in 26.2% of cases).

The rule cannot mean that non-physicians may testify whether technicians performed this test properly, but should not testify whether physicians accomplished it negligently. Nor can it mean that identification procedures involve "diagnosis, care, or treatment," simply because a physician can perform them. See 1961 Mich. Atty. Gen. Ops. No. 3557, at 79 (blood alcohol testing is not " 'diagnosis or * * * treatment' " which constitutes the practice of medicine); 1932 Mich. Atty. Gen. Ops., at 124 (same for forensic pathology tests); 1938 Mich. Atty. Gen. Ops., at 451 (same for X-rays).

Consequently, Evid. R. 601(D) and R.C. 2305.11(D)(3) do not apply to this case. Therefore, the plaintiff's expert was qualified to express his opinions about the blood grouping analysis performed by these defendants.

In considering a motion for a directed verdict, the court should consider the evidence most strongly in favor of the party against whom the motion is directed. It should grant the motion only when reasonable jurors would necessarily find against that party. Civ. R. 50(A)(4); *Fricker* v. *Stokes* (1986), 22 Ohio St. 3d 202, 205, 22 OBR 354, 357, 490 N.E. 2d 577, 580. In this case, we see no substantive difference between the plaintiff's two causes of action. The defendant physician's testimony and reasonable inferences from that testimony probably justified the jury's consideration of her case. With the testimony from the plaintiff's expert it was clearly submissible.

Hence, we sustain the first, second, fourth, seventh, and eighth assignments. Accordingly, we reverse the trial court's judgment and remand for a new trial.

### III

The plaintiff's remaining assignments of error concern evidentiary rulings. Her third assignment contests orders which precluded her use of three additional expert witnesses, because she had not identified them earlier. Her fifth assignment challenges the court's rejection of three exhibits as hearsay. Her sixth assignment complains that the court denied her motion for a mistrial when defense counsel discussed potential evidence with the defendants' personnel. Our disposition of her other assignments renders these disputed rulings moot or harmless, but we consider them to satisfy our obligation under App. R. 12(A).

The plaintiff filed her complaint on November 3, 1983. On December 19, 1983, the defendants submitted an interrogatory which asked her to identify any expert witness she intended to call at the trial. At a pretrial on December 19, 1984, she still had not answered that interrogatory, and the court directed her to do so within one month. She complied on January 13, 1985, by naming her non-physician liability expert and other potential witnesses who were not affected by the later disputed order.

With a trial scheduled for September 23, 1985, her counsel issued a notice to depose a new liability expert on September 12, 1985. At the same time, her attorney mailed defense

counsel a letter which identified that witness and two other physicians as new liability experts. On motion by the defendants, the court quashed the deposition notice and precluded plaintiff's use of the three new liability experts at trial.

The court could reasonably conclude that the plaintiff had violated Civ. R. 26(E)(1)(b) and its pretrial order. It had discretion to exclude testimony from experts who were not seasonably identified in response to an interrogatory, particularly when it ordered that response. *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83, 84-86, 19 OBR 123, 124, 482 N.E. 2d 1248, 1250; *Jones* v. *Murphy* (1984), 12 Ohio St. 3d 84, 12 OBR 73, 465 N.E. 2d 444, syllabus; cf. *Paugh & Farmer, Inc.* v. *Menorah Home for Jewish Aged* (1984), 15 Ohio St. 3d 44, 45-46, 15 OBR 142, 143, 472 N.E. 2d 704, 706 (comparable rule for violation of local rule).

Plaintiff's counsel argues that he did not need physician experts until a "medical claim" arbitration panel rejected the non-physician's testimony on July 15, 1985. However, his potential need for a physician expert was apparent when the court referred the case to that "medical claim" panel on January 16, 1985. Indeed, if this were a "medical claim," plaintiff's counsel should have recognized his need for a physician expert when he filed the complaint.

Plaintiff also urges that the court should have granted her motion to reconsider their exclusion when it continued the trial to October 22, 1985. But the court could still reasonably exclude the proffered experts. In *Gregrich* v. *Cuyahoga Cty. Hosp.* (Oct. 24, 1985), Cuyahoga App. No. 49673, unreported, this court explained the standards for excluding tardily disclosed expert testimony:

"Factors which affect the trial court's discretionary choice whether to permit or deny such testimony include (1) the proponent's justification for the delayed disclosure of the expert's identity or the expert's report, (2) the opponent's prejudice from that delay, and (3) the burden on the court's schedule to accommodate the respective parties' interests."

In this case, the court could reasonably conclude that (1) plaintiff lacked sufficient justification for her tardy selection of expert witnesses, (2) the defendants faced appreciable difficulties in preparing their response to three new experts, and (3) the court's own schedule would not easily accommodate efforts by both sides to develop this evidence.

There are circumstances when a court abuses its discretion by excluding testimony from experts who were not seasonably identified. See, *e.g., Nickey* v. *Brown* (1982), 7 Ohio App. 3d 32, 34, 7 OBR 34, 37, 454 N.E. 2d 177, 181. In this case, we cannot say that the court abused its discretion, so we overrule plaintiff's third assigned error. See *Huffman* v. *Hair Surgeon, Inc., supra,* at 87, 19 OBR at 126-127, 482 N.E. 2d at 1252 ("abuse of discretion" defined).

Plaintiff's fifth claimed error concerns the court's rejection of three scientific papers as hearsay. Such materials may sometimes serve to impeach an adverse party's expert. *O'Brien* v. *Angley* (1980), 63 Ohio St. 2d 159, 163, 17 O.O. 3d 98, 100, 407 N.E. 2d 490, 493. The defendants correctly argue that they are usually inadmissible as substantive evidence. *Hallworth* v. *Republic Steel Corp.* (1950), 153 Ohio St. 349, 41 O.O. 341, 91 N.E. 2d 690. Ohio has no counterpart for Fed. Evid. R. 803(18), a hearsay exception for learned treatises considered during an expert's testimony.

However, the defendant physician wrote two of these scientific papers

and the defendants used all of them to train their own personnel at seminars. Thus, they were statements made or adopted by the defendants and were not hearsay when the adverse party offered them as evidence. Evid. R. 801(D)(2)(a), 801(D)(2)(b); *Parker* v. *Baldwin Manor Nursing Home, Inc.* (June 21, 1984), Cuyahoga App. No. 47714, unreported. They were apparently relevant, so they were properly admissible.

At the same time, their exclusion was harmless here. Plaintiff's counsel read extensively from them to the jury in the course of his examination of the defendant physician and the defendant hospital's technician. Their admission as exhibits would have been largely cumulative. Cf. *Kovach* v. *Mourad* (Nov. 23, 1983), Cuyahoga App. No. 46395, unreported. Further, plaintiff's counsel failed to include the disputed documents in the appellate record, so we cannot determine whether their exclusion was prejudicial. Therefore, we overrule the fifth assignment of error.

Finally, the sixth assignment complains that the court denied a mistrial motion when defendants' counsel disclosed plaintiff's prospective questions to defense witnesses. The court had asked plaintiff's counsel why he was interested in a blood sample which the hospital's technician tested. Plaintiff's counsel explained that it contained an error. During a recess, defendants' counsel discussed that evidence with the defendant physician and the hospital's technician, before plaintiff's counsel could confront them with the error.

Plaintiff contends that defendants' counsel thereby violated the sequestration order which the court made pursuant to Evid. R. 615. Defense counsel's action may have violated the spirit of the sequestration order, if it did not violate its letter. Cf. *State* v. *Snowden* (1982), 7 Ohio App. 3d 358, 360, 7 OBR 458, 459, 455 N.E. 2d 1058, 1062-1063. However, it did not prevent the plaintiff from having a fair trial, so it did not mandate a mistrial. At most, it prevented plaintiff's counsel from surprising those witnesses with that mistake.

Therefore, the court did not abuse its discretion by refusing to grant a mistrial. Plaintiff sought no other remedy or sanction. We overrule the sixth assignment of error.

For the reasons stated earlier, we reverse the trial court's judgment and remand the case for a new trial.

*Judgment reversed*
*and cause remanded.*

NAHRA, J., concurs.

KRUPANSKY, J., dissents.

KRUPANSKY, J., dissenting. I respectfully dissent from the majority's finding appellant's first two assignments of error are meritorious. Appellant's first and second assignments of error dealt with the testimony of Mr. Marsters, appellant's sole liability expert, being rendered incompetent by operation of R.C. 2743.43(A) and Evid. R. 601(D). These sections set forth certain criteria which a person giving expert testimony must meet when testifying on liability issues relative to a medical claim.

The term "medical claim" is defined by R.C. 2305.11(D)(3) as follows:

"[A]ny claim asserted in any civil action against a physician, podiatrist, or hospital *arising out of the diagnosis, care, or treatment of any person.*" (Emphasis added.)

The majority of the court argues the present claim is not a medical claim.

The premise of this conclusion is the majority's contention the term "medical claim," as set forth in R.C.

2305.11(D)(3), "describes clinical assistance for a patient." The majority then concludes since the blood grouping tests performed on appellant did not constitute clinical assistance, the prerequisites of Evid. R. 601(D) and R.C. 2743.43(A) do not apply to this case. Therefore, the testimony of Mr. Marsters was competent and the trial court's grant of a Civ. R. 50(A)(4) directed verdict for appellees was error.

The error in this argument is two-fold. First, in asserting the present case does not arise "out of the diagnosis, care, or treatment of any person," the majority violates "[a] settled principle of statutory construction * * * that words in a statute are to be given their plain and ordinary meaning, unless it is otherwise clearly indicated." *Lake Cty. Natl. Bank of Painesville* v. *Kosydar* (1973), 36 Ohio St. 2d 189, 191, 65 O.O. 2d 404, 406, 305 N.E. 2d 799, 801. The plain and ordinary meaning of the term "care," as that term is used in R.C. 2305.11(D)(3), infers the conduct exhibited by Dr. King and Ms. Cylar in the case *sub judice.* Specifically, the term "care" is defined by Webster's Ninth New Collegiate Dictionary (1983) 207, to include, under a doctor's charge or supervision. In the case *sub judice,* appellant was under Dr. King's charge and supervision when she submitted to his care and permitted both him and his assistant, Ms. Cylar, to perform the blood grouping tests upon her, interpret the results of such tests, and report such results to the juvenile court. Consequently, appellant's action is a medical claim based upon the plain and ordinary meaning of that term in R.C. 2305.11(D)(3).

Moreover, appellant has previously admitted her claim against appellees is a medical claim. Specifically, paragraph six of the amended complaint sets forth an allegation sounding in a medical claim. Paragraph six states as follows:

"Defendants failed to exercise that *degree of care* that hospitals and physicians of similar training and in similar communities are required to exercise in like circumstances." (Emphasis added.)

Paragraph ten of the amended complaint is also premised upon a medical claim, as paragraph ten states:

"Defendant Cleveland Clinic by and through its staff and employees and defendant John W. King, individually, were negligent and failed to exercise that degree of *ordinary care* and skill to its patients in general and plaintiff in particular." (Emphasis added.)

Coupling R.C. 2305.11(D)(3) with the foregoing admissions by appellant, it is clear the claim involved in the case *sub judice* is a medical claim.

The second shortcoming in the majority's analysis is its assertion the term "medical claim" describes "clinical assistance" for a patient. Not only does the majority trammel the principle of statutory construction as discussed, *supra,* the court then goes on to interpret the term "medical claim" as describing only "clinical assistance," without any authority in support thereof. If the majority chooses to impose such an unduly restrictive interpretation upon the meaning of "medical claim," and in doing so violates the principle that words in a statute are to be given their plain and ordinary meaning, the majority should at least provide some direct, precedential authority in support thereof. The opinion, however, is absent any such authority. The majority simply chooses to adopt an unsupported belief that the term "medical claim" describes only clinical assistance.

Based upon the principle that words in a statute are to be given their plain and ordinary meaning and due to the majority's failure to support its conclusion that a medical claim is limited to clinical assistance, I am unconvinced by their logic and therefore

believe the present action is a medical claim. The competency of an expert witness such as Mr. Marsters is determined by R.C. 2743.43(A), which states, in part, as follows:

"(A) No person shall be deemed competent to give expert testimony on the liability issues in a medical claim * * * unless:

"(1) Such person is licensed to practice medicine * * *:

"(2) Such person devotes three-fourths of his professional time to the active clinical practice of medicine * * * or to its instruction in an accredited university." See, also, Evid. R. 601(D).

In the case *sub judice,* Mr. Marsters was simply not licensed to practice medicine and surgery despite his other qualifications. Therefore, since he failed to comport with the Ohio Legislature's competency requirements relative to an expert witness' testifying in a medical claim, the trial court properly ruled Mr. Marsters' testimony incompetent and properly directed a verdict in favor of appellees.

In light of the foregoing discussion, I would affirm.

### Appendix

"Assignments of Error

"I. Blood grouping tests to determine paternity are not the practice of medicine, thus such tests cannot give rise to a medical claim.

"II. Blood grouping tests to determine paternity do not require any diagnosis, care, or treatment of a person, thus the trial court erred in ruling that the testimony of Roger Marsters, Ph.D. was incompetent.

"III. Whether the trial court erred in granting the defendants' motion to quash notice to take deposition and motion in limine filed on September 10, 1985.

"IV. Whether the trial court erred in its finding that the plaintiff failed to provide competent expert testimony on the issues of liability in the medical claim, if appellant's claim was solely a medical claim within the meaning of Ohio Revised Code Section 2305.11 D 3.

"V. Whether the trial court erred in denying the admission of Exhibits 17, 18, 19.

"VI. Whether the trial court erred in failing to grant appellant's motion for a mistrial where appellees' counsel violated the court's order for a separation of witnesses.

"VII. Whether the trial court erred in directing a verdict for the appellees.

"VIII. Whether the trial court erred in directing a verdict for the appellees on appellant's second cause of action."