OPINION
DaJuan Darden[1] appeals from a judgment of the Montgomery County Court of Common Pleas which found him guilty of possession of crack cocaine in violation of R.C. 2925.11(A).
The evidence presented at the hearing on the motion to suppress established two different versions of the events in question. The state presented the following version of events.
On June 3, 1997, Officers Joseph Wiesman and George Hughes, members of the Strike Force Unit of the Dayton Police Department, were on routine patrol. As members of the Strike Force, their assignment was to strictly enforce traffic laws and to stop any vehicle that committed a traffic violation. Around 11:30 p.m., they were traveling southbound on Dennison Avenue behind a gray Chevrolet Suburban. After observing the driver of the Suburban turn westbound onto Germantown Street without using a turn signal, the officers activated their lights in an attempt to initiate a traffic stop of the vehicle.
The driver of the Suburban did not immediately pull to the curb, but instead proceeded for six to seven blocks. While the officers were behind the Suburban, they could see through the rear window that there were four people in the vehicle. Further, they could see the back seat passenger on the driver's side, later identified as Darden, moving around in the vehicle. Officer Wiesman testified that Darden "raised up high in the seat" and "went all the way over * * * towards the [other] back seat passenger of the car." Officer Hughes testified that Darden was "all over [the] back seat" and was "reaching down below him[self]." As soon as Darden stopped moving, the driver of the Suburban pulled the vehicle to the curb.
Immediately after the vehicle pulled to the curb, the driver and front passenger "jumped out of their vehicle, began shouting obscenities back toward [the officers]," and started walking toward the police cruiser. The officers ordered the two individuals to stop, made contact with them, and placed them into the back seat of the cruiser. During this time, Darden and the other rear passenger remained in the vehicle.
The officers decided to approach Darden because his movements in the back seat and the actions of the driver and front passenger had made them suspect that he was concealing a weapon. When they asked Darden to step out the vehicle, he was very nervous and his hands were shaking. Officer Wiesman conducted a pat down of Darden, who tightened up and became even more nervous as Officer Wiesman reached his buttocks area. During the pat down, Officer Wiesman felt a "large rock substance in the seat of [Darden's] pants that [he] recognized to [be] crack cocaine."
 Darden was asked to return to the Suburban until additional police crews arrived. Officer Stephen Bergman received the call for assistance and arrived on the scene. Officer Wiesman asked Officer Bergman to place Darden in his cruiser, and Officer Bergman conducted a pat down of Darden before allowing him to enter the cruiser. Officer Bergman testified that, during the pat down, he "[had felt] a bulge, [a] very rock hard, abnormal bulge in [Darden's] buttocks area" and that he had immediately suspected it to be crack cocaine. The officers then asked Darden to remove the contraband, but he stated that he did not know what they were talking about. Sergeant Ellis Willis was then called to authorize a strip search of Darden.
Darden was transported to the Third District Dayton Police Headquarters. He was taken into a men's restroom with Officers Wiesman, Hughes, Bergman, and Sergeant Willis.
While Officer Hughes secured the door so no one could enter the room, Officer Wiesman donned rubber gloves and pulled down Darden's pants and underwear. Although the actual crack cocaine was concealed between Darden's buttocks, part of the baggie containing the crack cocaine was immediately apparent. Officer Wiesman removed the baggie without having to separate Darden's buttocks. Darden was then arrested for possession of crack cocaine.
The defense's version of the events differed from the state's version in several key respects. The following people testified on Darden's behalf: Wade Jackson, the driver of the Suburban; Michael Bannister, the front seat passenger of the Suburban and a relative of Jackson; James Thompson, a relative of Bannister and Jackson and witness to the latter part of the traffic stop; and Darden himself.
 According to the occupants in the vehicle, Jackson had used his turn signal before turning onto Germantown Street. He had then proceeded down Germantown Street, eventually turning onto Gard Street, where he pulled to the curb in front of Bannister's house. The occupants of the vehicle claimed that there had been large speaker boxes in the back of the Suburban which would have blocked all of the rear window except the top one or two inches.
Bannister and Jackson stated that, as they had exited the Suburban and walked toward Bannister's house, they saw, for the first time, a police cruiser with its lights activated. The cruiser pulled up behind them and Jackson and Bannister asked the officers, without yelling obscenities, "what [is] the problem?"
According to Darden, he was patted down four different times during the traffic stop. Thompson testified that, after being patted down the second time, and while in the back of Officer Bergman's police cruiser, Darden had asked for a lawyer, but that Bergman had acted as if he did not hear Darden's request. Darden stated that he had asked for an attorney "several different times" while at the Third District Headquarters before the strip search occurred, but that his request was ignored. Darden claimed that during the strip search, Wiesman "forcibly put his hands between [Darden's buttocks]."
Darden pled not guilty and filed a motion to suppress arguing, inter alia, that the officers had not possessed reasonable articulable suspicion to make the traffic stop or to pat him down, and that the strip search had been conducted without a warrant in violation of the Fourth Amendment and R.C. 2933.32. A suppression hearing was held on December 5, 1997, January 8, 1998, and January 15, 1998. On April 9, 1998, the trial court overruled the motion to suppress. Darden changed his plea to no contest and was convicted of possession of cocaine in violation of R.C. 2925.11(A) on August 10, 1998. The trial court sentenced him to two years in jail and suspended his driver's license. Darden now appeals the denial of his motion to suppress.
Darden advances three assignments of error.
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN NOT SUPPRESSING EVIDENCE OBTAINED BY OFFICER WIESMAN WHEN HE DID NOT STATE A REASONABLE ARTICULABLE SUSPICION TO BELIEVE THAT MR. DARDEN HAD A WEAPON.
Darden argues that Officers Wiesman and Hughes did not have reasonable articulable suspicion to justify searching him for a weapon. Specifically, he argues that the movements the officers allegedly had seen him make in the back seat were insufficient to give them a reasonable articulable suspicion that he was armed and dangerous.
"When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses." State v. Clary (Sept. 30, 1996), Lawrence App. No. 96CA7, unreported, at *2, citing State v. Mills (1992),62 Ohio St.3d 357, 366, 582 N.E.2d 972, 982, certiorari denied (1992), 505 U.S. 1227, 112 S.Ct. 3048. Thus, "in its review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." Clary, at *2, citing State v. Guysinger (1993), 86 Ohio App.3d 592, 594,621 N.E.2d 726, 727. The appellate court must, however, determine denovo whether the trial court's conclusions of law, based on those findings of fact, are correct. State v. Klein (1991), 73 Ohio App.3d 486,488, 597 N.E.2d 1141, 1143.
The Fourth Amendment bars unreasonable searches and seizures.Maryland v. Buie (1990), 494 U.S. 325, 331, 110 S.Ct. 1093, 1096
(citation omitted). Warrantless searches are per se unreasonable unless they fall within a carefully defined group of exceptions.Katz v. U.S. (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514. One of these exceptions is described in Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868. State v. Dotson (1990), 66 Ohio App.3d 182,185, 583 N.E.2d 1068, 1069.
In Terry, the United States Supreme Court held that:
 [A] reasonable search for weapons [is permitted] for the protection of the police officer, where [the officer] has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given * * * to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.
Terry, 392 U.S. at 27, 88 S.Ct. at 1884 (citations omitted). Further, the Supreme Court of Ohio has stated that "[w]here a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search for the safety of himself and others." State v. Bobo (1988), 37 Ohio St.3d 177,524 N.E.2d 489, paragraph two of the syllabus, certiorari denied (1988), 488 U.S. 910, 109 S.Ct. 264.
In its denial of Darden's motion to suppress, the trial court apparently believed the state's version of the events. Our review of the record reveals that the state's version was supported by competent, credible evidence, i.e., the officers' testimony at the suppression hearing. Thus, we accept the trial court's findings of fact and utilize them in our review of the trial court's conclusions of law.
In its denial of the motion to suppress, the trial court stated:
 [Darden], upon activation of the officer's overhead lights, began to make definitive movements, including moving upright, then leaning over [toward] the right side passenger. These movements could reasonably be construed as movements in which the defendant was hiding something, whether that something be drugs or weapons. Moreover, once the vehicle stopped, the front two occupants jumped out of the vehicle and immediately approached the officer's cruiser. The officers believed this tactic was used to distract them from observing what [Darden] was hiding. Furthermore, upon approaching [Darden], Officer Wiseman [sic] testified that he was sweating, seemed nervous, and would not make eye contact with the officer.
The officers' testimony at the suppression hearing further revealed that Officers Wiesman and Hughes were eight-year and five-year veterans of the Dayton Police Department, respectively. Officer Wiesman stated that Darden's movements in the car, the driver's delay in pulling to the curb, and the actions of the passenger and driver in immediately exiting the vehicle and approaching the cruiser "made [him] very nervous, thinking [that Darden was] probably concealing a weapon." He testified that, although he had previously made traffic stops where the driver and passengers had exited the vehicle, he had never had a passenger and driver "do the exact same thing, * * * get out, walking, [and] saying the same thing" and that such conduct had worried him because it appeared that they were trying to get his focus attracted to them and away from the back seat passengers. Regarding Darden's nervousness, Officer Wiesman said "[when] somebody is that nervous it tends to make me nervous, because I am thinking something is wrong here." Similarly, Officer Hughes testified that he had been concerned that Darden had had a weapon that could have been used against the officers.
Based upon the totality of the circumstances, the trial court could have reasonably concluded that the officers were warranted in their belief that Darden might have been armed and dangerous. Thus, the trial court did not err when it concluded that the officers had reasonable articulable suspicion to justify patting down Darden.
The first assignment of error is overruled.
 II. THE STRIP SEARCH OF MR. DARDEN VIOLATED THE FOURTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA.
Darden makes two arguments in support of this assignment of error. We will address these arguments in the order that facilitates our discussion.
Darden argues that the trial court erred when it held that the strip search complied with R.C. 2933.32 because, unless there is a medical emergency, the statute requires that an officer obtain a warrant before performing a search.
R.C. 2933.32(B)(4) states "[u]nless there is a legitimate medical reason or medical emergency justifying a warrantless search, a body cavity search shall be conducted only after a search warrant is issued * * *." (Emphasis added.) The statute does not require that a search warrant be obtained before a strip search is conducted. See R.C. 2933.32. "Body cavity search" is defined as "an inspection of the anal or vaginal cavity of a person." R.C. 2933.32(A)(1). "Strip search" is defined as "an inspection of the * * * buttocks * * * that is preceded by the removal * * * of the person's clothing that directly covers the person's * * * buttocks * * * and that is conducted visually, [or] manually, * * * while the person is detained * * *. R.C. 2933.32(A)(2).
At the suppression hearing, Officer Wiesman testified that as soon as he had pulled down Darden's pants, he had seen part of the baggie between his buttocks. He further stated that he had removed the baggie without separating Darden's buttocks and that it had not been located within any body cavity. Officer Hughes and Sergeant Willis, who had also been present for the strip search, testified that they had seen part of the baggie as soon as Darden's pants had been pulled down. Thus, a strip search was conducted of Darden's buttocks, not a body cavity search, and R.C.2933.32 did not require the officers to obtain a warrant before conducting the strip search.
Darden further argues that "warrantless searches which involve bodily intrusions require more [than] probable cause; rather, there must be a showing of `exigent circumstances' to justify such an intrusion." In support of his argument, he citesSchmerber v. California (1966), 384 U.S. 757, 86 S.Ct. 1826 andState v. Walker (July 28, 1998), Franklin App. No. 97APA09-1219, unreported, discretionary appeal not allowed (1998), 84 Ohio St.3d 1432,702 N.E.2d 1212.
In Schmerber, a physician, at the direction of a police officer, drew a blood sample from the defendant without his consent to test the level of alcohol in his blood . Schmerber,384 U.S. at 758, 86 S.Ct. at 1829. The Supreme Court concluded that a warrantless search which involved an intrusion into the body, such as the extraction of a blood sample, will be upheld only if there were exigent circumstances which made it impracticable to obtain a warrant prior to the search. Id. at 770-771, 86 S.Ct. at 1835-1836. In Walker, the police conducted an on-street strip search for contraband in the defendant's pants and the court "conclude[d] that the state [had] failed to show that the search was conducted in an objectively reasonable manner." Walker, Franklin App. No. 97APA09-1219, at *2, *10.
We believe that both of these cases are distinguishable from the case currently before us. There was no intrusion into
Darden's body, such as occurs when a blood sample is extracted from an individual, and the strip search of Darden was conducted in a private manner in a men's restroom, not on a public street.
The landmark case regarding the constitutionality of strip searches is Bell v. Wolfish (1979), 441 U.S. 520, 99 S.Ct. 1861.Fricker v. Stokes (1986), 22 Ohio St.3d 202, 205, 490 N.E.2d 577,580. The Wolfish Court stated:
 The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.
Wolfish, 441 U.S. at 559, 99 S.Ct. at 1884.
Regarding the scope of the intrusion, Officer Wiesman testified at the suppression hearing that as soon as Darden's pants had been pulled down, the baggie had been visible and he had immediately retrieved it without separating Darden's buttocks. Regarding the place and manner in which the strip search was conducted, Officer Wiesman stated that he had worn rubber gloves during the search and that the search had taken place in a men's restroom, where only the officers and sergeant involved in the traffic stop had been present. Further, Officer Bergman testified that during the strip search, he had secured the door to assure that no one could have walked in while the search was in progress. Regarding the justification for the initiation of the strip search, Officers Wiesman and Bergman, both of whom were experienced in recognizing contraband during pat down searches, had indicated that they had felt an object which they had believed to be contraband in Darden's buttocks area. In consideration of the evidence in the record, we cannot conclude that the strip search of Darden was unreasonable under the Fourth Amendment.
The second assignment of error is overruled.
 III. THE TRIAL COURT COMITTED [sic] PREJUDICIAL ERROR IN NOT SUPPRESSING THE EVIDENCE WHEN OFFICER WIESMAN'S SEARCH EXCEEDED THE PERMISSABLE [sic] SCOPE OF A TERRY "STOP AND FRISK" SEARCH.
Darden argues that the trial court erred when it concluded that the plain feel doctrine authorized Officer Wiesman to retrieve the crack cocaine from Darden's buttocks. Specifically, he argues that it was not "immediately apparent" to Officer Wiesman that the substance was crack cocaine.
The United States Supreme Court has held that:
 [W]hen an officer feels an object during a Terry-authorized patdown and the identity of that object is immediately apparent from the way it feels, the officer may lawfully seize the object if he * * * has probable cause to believe that the item is contraband-that is, if the "incriminating character" of the object is "immediately apparent."
State v. Lee (1998), 126 Ohio App.3d 147, 150, 709 N.E.2d 1217,1218-1219 discretionary appeal not allowed (1998), 82 Ohio St.3d 1410,694 N.E.2d 75, citing Minnesota v. Dickerson (1993),508 U.S. 366, 375, 113 S.Ct. 2130, 2137. If the incriminating character of the object is not immediately apparent, but rather the officer must conduct a further search by manipulating the object to determine its character, the further search is "not authorized by Terry or by any other exception to the warrant requirement" and is thus unconstitutional. Dickerson,508 U.S. at 379, 113 S.Ct. at 2139.
At the suppression hearing, Officer Wiesman testified that, during the pat down, he "could feel a large rock substance in the seat of [Darden's] pants that [he] recognized to [be] crack cocaine." He said that although he could not tell whether it was "one lumpy object or a bunch of little lumps," he "knew as soon as [he] hit it, [that] it was going to be some kind of contraband, possibly crack." He also testified regarding his extensive experience:
 Q. Based on your experience, [have] you had an opportunity to feel crack cocaine before?
A. Many times.
Q. Approximately how many for the Court's information?
 A. I would say 600 to 700 times. I do all the search warrants in the city when I am working. Our strike force unit is attached to the drug unit and we do all search warrants and swat team. I do all those search warrants. I work undercover, do buy-busts two to three times a month. I make drug arrests, I would guess, two to three times a week due to us being assigned to those high areas. It's the nature of the job. I come in contract with it a lot.
He further stated that it he did not have to manipulate the object to recognize it because "[i]t was very a [sic] large piece of crack cocaine." Thus, the trial court did not err when it concluded that Officer Wiesman was authorized to retrieve the crack cocaine based on the plain feel doctrine.
The third assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Johnna M. Shia
Michael C. Thompson
Hon. Patrick J. Foley
[1] The record refers to the defendant as "DeJuan Darden," "Dejuan Darden," "DuJuan Darden," and "DaJuan Darden." When signing various documents in the record, defendant-appellant spelled his name "DaJuan Darden." Thus, we assume that "DaJuan Darden" is the correct spelling and have captioned our opinion as such.