[Cite as *State v. Burks*, 2011-Ohio-3365.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

STATE OF OHIO,                                           :          Case No. 10CA10

                                                        :

          Plaintiff-Appellee,                           :

                                                        :          DECISION AND
     v.                                                 :          JUDGMENT ENTRY

                                                        :

ANNIE R. BURKS,                                         :

                                                        :          **RELEASED 05/13/11**

          Defendant-Appellant.                          :
_____
                                   APPEARANCES:

Timothy Young, State Public Defender, Columbus, Ohio and Katherine A. Szudy,
Assistant State Public Defender, Columbus, Ohio, for appellant.

James E. Schneider, Washington County Prosecutor, and Alison L. Cauthorn,
Washington County Assistant Prosecutor, Marietta, Ohio, for appellee.
_____
Harsha, P.J.

     {¶1}     Annie R. Burks was arrested for operating a vehicle under the influence of

alcohol, a drug of abuse, or a combination of them ("OVI") and taken to the Washington

County Jail ("WCJ").  Before placing Burks in the general jail population, a corrections

officer performed a strip search, instructing Burks to remove her clothing and bend over

so the officer could check for weapons and other contraband.  In the process, the officer

observed an object protruding from Burks' vagina.  Burks removed the object and

admitted that it was a condom filled with cocaine.  After a grand jury indicted her for

various drug-related offenses, Burks filed a motion to suppress the cocaine, which the

trial court denied.  Burks pleaded no contest to illegally conveying or attempting to

convey a drug of abuse into a detention facility, and the trial court found her guilty of the offense.

{¶2}    On appeal, Burks challenges the court's denial of her motion to suppress. She contends that the search of her person was unreasonable under the federal and state constitutions. However, the nature of Burks' alleged crime and the circumstances surrounding her arrest presented a risk of hidden contraband. Moreover, a female corrections officer conducted the strip search in private, did not touch Burks during the search, and only performed the search when it became apparent that Burks could not post bond and had to be moved into the general jail population, where she could potentially expose other detainees to secreted contraband. Under these circumstances, we conclude the search was reasonable and affirm the trial court's judgment.

I.  Facts

{¶3}    Law enforcement arrested Burks for OVI, a misdemeanor offense,[1] and took her to the WCJ. After WCJ personnel found a condom filled with cocaine in Burks' vagina, the Washington County Grand Jury indicted Burks for trafficking in drugs, possession of drugs, and illegally conveying or attempting to convey a drug of abuse into a detention facility. Burks filed a motion to suppress the cocaine, arguing in part that corrections officers found it during an unconstitutional search.

{¶4}    At the motion to suppress hearing, Lori Greathouse, a Washington County Sheriff's Office corrections officer, testified that when law enforcement bring an arrestee to the WCJ, a corrections officer reads the arrestee a conveyance sign and asks the arrestee if she has any contraband to hand over. Then the booking process begins.

---

[1] In our review of the trial record, we did not find specific mention of whether it was a misdemeanor or felony OVI offense. However, in its appellate brief, the State acknowledges that Burks was a misdemeanor arrestee. (Appellee's Br. 9).

According to Greathouse, the WCJ has a "dress out" policy for arrestees who cannot make bond and will be moved into the general jail population. She explained that corrections officers "advise [arrestees] to take off their clothes, and they're instructed to strip down, because we have to check their clothes for anything, for any, you know, contraband or weapons or-- we check their bras, we check their underwear. They're not allowed to have metal pieces in their bras. We give them back what they're allowed to keep and we have them bend over and spread their buttocks and their vaginal areas, if it's a female." Greathouse testified that corrections officers do this "[s]o that we can observe to see that [arrestees are] not hiding anything in any crevice. And they do that on their own; we don't touch them. They stand back up and they put their jail uniform on and we take them out of the processing room."

{¶5}    Greathouse and Alicia Cannon, another Washington County Sheriff's Office corrections officer, testified that when troopers brought Burks in, one of the troopers told them that a male subject with Burks during the traffic stop had a loaded gun. The women also testified that a trooper warned them that he found a syringe outside Burks' vehicle. Greathouse testified that the trooper was not sure if it belonged to Burks.

{¶6}    Cannon testified that she read Burks the conveyance sign and did a pat down search. Burks told Cannon she did not have any contraband. Cannon asked Burks if anyone would be willing to "come and bond her out," and Burks told her "she didn't think anybody would come * * *." Then Cannon took Burks' fingerprints and began the "dress out" process. Cannon testified that she instructed Burks to take her clothes off and "put them off to the side." She "told [Burks] to turn around and bend

over, and then I – that's when I saw the contraband." Cannon testified that the object was white and protruded "[m]aybe a quarter of an inch" from Burks' vagina. Cannon asked Burks to remove the item. Burks told her it was a tampon. Cannon again asked her to remove the object and told Burks she would "give her a pad instead." Burks began to "break down" and said she did not want to pull it out. Cannon radioed Greathouse for assistance.

{¶7}   When Greathouse arrived, she observed Burks with her head up against the wall "mumbling something." Cannon told Greathouse that she observed something in Burks' vaginal area and that Burks refused to give it to Cannon. Greathouse told Burks to give Cannon the object. Burks mumbled and put her head up against the wall again. Greathouse repeated the instruction. Burks removed the object – a condom – and placed it in a Ziploc bag. Greathouse testified that Burks told them the condom contained cocaine.

{¶8}   The trial court denied Burks' motion to suppress. Subsequently, she pleaded no contest to the illegal conveyance charge, a third degree felony, and the court dismissed the remaining charges.[2] After the trial court found Burks guilty and sentenced her, she appealed. Appointed counsel advised us that she reviewed the record and could discern no meritorious claims for appeal, and under *Anders v. California* (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, counsel moved to withdraw. Upon review of the record, we determined that there was a potentially meritorious claim for appeal, i.e. the constitutionality of the search, and appointed new counsel to prepare a merit brief.

## II. Assignment of Error

---

[2] The trial court's final judgment entry erroneously states that Burks pleaded guilty to the charge.

**{¶9}** Burks assigns the following error for our review:

The trial court erred in failing to suppress evidence obtained as the result of an unconstitutional search and seizure. Fourth and Fourteenth Amendments to the United States Constitution; Section 14, Article I of the Ohio Constitution. (February 4, 2010 Journal Entry; February 16, 2010 Journal Entry; March 19, 2010 Journal Entry).

### III. Motion to Suppress

### A. Standard of Review

**{¶10}** Our review of a trial court's decision on a motion to suppress presents a mixed question of law and fact. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶100, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶8. When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. Id. Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Landrum* (2000), 137 Ohio App.3d 718, 722, 739 N.E.2d 1159. Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case. *Roberts* at ¶100, citing *Burnside* at ¶8.

### B. Analysis

**{¶11}** In her sole assignment of error, Burks contends that the trial court erred by denying her motion to suppress the cocaine because the search of her person was unreasonable under the federal and state constitutions. The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *."

Section 14, Article I of the Ohio Constitution, which contains language nearly identical to

its federal counterpart, also prohibits unreasonable searches and seizures.  Because

these provisions contain virtually identical language, the Supreme Court of Ohio has

interpreted them as affording the same protection.  *State v. Orr*, 91 Ohio St.3d 389, 391,

2001-Ohio-50, 745 N.E.2d 1036, citing *State v. Robinette*, 80 Ohio St.3d 234, 238,

1997-Ohio-343, 685 N.E.2d 762.

{¶12}  In *Fricker v. Stokes* (1986), 22 Ohio St.3d 202, 205, 490 N.E.2d 577

(footnote omitted), the Supreme Court of Ohio explained:

> The landmark case as to the constitutionality of strip searches is
> *Bell v. Wolfish* [(1979), 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447],
> in which the United States Supreme Court held that, although the
> institution need not have probable cause in the technical sense before
> conducting a strip search, courts must balance the need for the particular
> search against the invasion of personal rights that the search entails.
> Noting that "[t]he test of reasonableness under the Fourth Amendment is
> not capable of precise definition or mechanical application * * *," *id.* at 559,
> 99 S.Ct. at 1884, the United States Supreme Court stated that in striking
> the balance, "[c]ourts must consider the scope of the particular intrusion,
> the manner in which it is conducted, the justification for initiating it, and the
> place in which it is conducted." *Id.  Wolfish* dealt with whether visual
> body-cavity searches "*can ever* be conducted on less than probable
> cause." (Emphasis *sic.*)  *Id.* at 560, 99 S.Ct. at 1885.  The court found that
> they could, but emphasized that the constitutionality of such an intrusion
> must be determined on a case-by-case basis.

{¶13}  We will assume that Burks, a misdemeanor pretrial detainee, retained

some Fourth Amendment rights upon her confinement in the WCJ.  See *Bell* at 558.

Nonetheless, applying the *Bell* balancing test, we find the search of her person

reasonable under the federal and state constitutions.  Regarding the scope, place, and

manner of the search, Cannon, a female corrections officer, conducted the search of

Burks in private and only involved Greathouse, another female corrections officer, when

Burks refused to remove the object from her vagina.  Neither officer touched Burks

during the search. And although the WCJ policy called for a visual body cavity inspection, from the record it appears that Cannon spotted the object protruding from Burks' vagina before inspecting Burks' vaginal or anal cavities. In other words, at the time Cannon saw the object, the search constituted a strip search, not a more invasive body cavity search. See generally *Bell*, supra, at 558 & fn. 39.

{¶14} As for the justification for the search, we recognize that "[a] detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." Id. at 559. Here, Cannon did not "dress out" Burks until it became apparent that she could not post bond and would have to intermingle with the general jail population. Law enforcement arrested Burks for OVI and found a syringe outside her vehicle during the traffic stop. And although the State did not specifically mention it at the suppression hearing, the record contains an affidavit from one of the troopers at the traffic stop averring that he smelled alcohol in Burks' vehicle and that Burks admitted to being on prescription Vicodin and Oxycontin at the time of her arrest. In addition, the State presented evidence that Burks' passenger had a loaded gun on his person during the traffic stop. Taken together, these facts gave rise to a reasonable suspicion that Burks might have contraband hidden on her person and that she could expose other detainees to it once moved into the general population.

{¶15} We conclude that the search of Burks was reasonable under the federal and state constitutions. A corrections officer who was the same sex as Burks conducted a strip search: 1.) in private; 2.) without touching Burks; 3.) only after it became apparent that Burks had to be moved into the general jail population; and 4.)

when the nature of Burks' alleged crime and the circumstances surrounding her arrest pointed to a risk of hidden contraband. Under these circumstances, the need for institutional safety outweighed the invasion of personal rights the search entailed. In reaching this conclusion we do not address the issue of whether a per se policy that subjects all misdemeanor detainees to a strip and/or body cavity search without requiring any individualized suspicion passes constitutional muster.

{¶16} Accordingly, we find that the trial court properly denied the motion to suppress. We overrule Burks' sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

Abele, J. & McFarland, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
William H. Harsha, Presiding Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**