DEFFINBAUGH et al., Appellants,

v.

OHIO TURNPIKE COMMISSION, Appellee.

[Cite as *Deffinbaugh v. Ohio Turnpike Comm.* (1990), 67 Ohio App.3d 692.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 56691.

Decided May 21, 1990.

*Friedman, Domiano & Smith Co., L.P.A.,* and *Jeffrey H. Friedman; Schulman & Schulman* and *Howard A. Schulman,* for appellants.

*Kitchen, Messner & Deery* and *James Barnhouse,* for appellee.

NAHRA, Presiding Judge.

On February 25, 1984, Ray Deffinbaugh was driving a tractor trailer eastbound on the Ohio Turnpike. Ray was returning to his home in Maryland from Omaha, Nebraska, where he and his co-driver, Dan Kern, had made a delivery. Each worked for the Alberti Trucking Company. Throughout their

excursion, the general format was that one slept while the other drove. They stopped to eat and rest periodically.

Ray resumed driving the vehicle in Toledo, Ohio. As they drove eastward, it began to snow and the highway became snow covered. At approximately 7:00 a.m., Ray and Dan observed a tractor trailer rig overturned in the median of the highway. Dan testified that Ray was driving at thirty miles per hour at that time. Thereafter, Dan went to sleep and remembers nothing until being awakened at the time of the accident.

At approximately 7:40 a.m., Ray's tractor struck a concrete bridge pillar in the area between the through highway and the eastbound ramp at exit 10. The collision with the bridge pier caused the tractor's roof to collapse onto Ray. As a result, Ray suffered a severe brain injury.

There were no eyewitnesses to the accident. At trial each party presented a variety of expert witnesses for purposes of accident reconstruction.

Bruce Enz, a vice president at the Institute of Safety Analysis, Inc., testified on behalf of the Deffinbaughs that the tractor was moving from right to left—from the area of the exit lanes to the area of the through lanes. He determined that the right front corner of the tractor struck the guardrail which was situated to the left of the tractor. Such contact caused the tractor trailer to jackknife.

The Deffinbaughs also presented the testimony of Gary Alexander, a psychologist and human factors expert, who asserted that the design of the highway caused the accident because of the lack of guidance to the driver concerning the emergence of the exit.

Joe Wade Kent, a mechanical engineer, testified on behalf of the defendant that the tractor trailer jackknifed about two hundred feet before striking the tie of the guardrail. Kent introduced a computer simulation in order to demonstrate his version of the accident.

At the time of the accident, Ray was twenty-one years old and had made three or four trips out of state. Prior to the trip, Ray did not have any experience driving a tractor trailer in snow or ice.

The eastbound exit 10 at the I–71/Ohio Turnpike interchange was designed and constructed in 1963 and 1964. The design was furnished by the J.E. Greiner Engineering Company ("Greiner") at the request of the Ohio Turnpike Commission ("O.T.C.").

On February 26, 1986, Charles and Joan Deffinbaugh, Ray's parents, filed a complaint against the O.T.C. alleging negligence with respect to the design of eastbound exit 10. On October 5, 1988, trial commenced. It was determined that Charles Deffinbaugh, as Ray's guardian, was the only remaining plain-

tiff. On October 14, 1988, the jury returned a verdict in favor of the O.T.C. This appeal follows.

I

Appellants' first assignment of error states:

"The trial court erred when it excluded evidence necessary to establish defendant's admissions on several crucial elements of negligence."

In order to establish a case of negligence based on a design defect, the Deffinbaughs sought to prove that the O.T.C. had knowledge of a hazardous condition where the accident took place at the eastbound exit 10. In order to establish such knowledge, the Deffinbaughs sought to admit a correspondence between Greiner, the architectural consultant, and the O.T.C. that bridge piers should not be constructed on the westbound exit 10. The Deffinbaughs sought to show that the westbound exit was built without bridge piers and because the two bridges and two exits were similar, that the O.T.C. should not have designed the eastbound exit with bridge pillars in the area between the exit lane and the through lanes of travel.

The trial court excluded these exhibits by determining that the evidence regarding the design of the westbound I–71 bridge at exit 10 was not relevant to the design of the bridge where the accident occurred on the eastbound ramp of exit 10.

■ Evid.R. 403(A) requires a trial court to exclude evidence, even though relevant, when the probative value of such evidence is "substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." When a trial court determines that evidence should not be admitted, its ruling will not be reversed absent a clear and prejudicial abuse of discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 17 O.O.3d 98, 407 N.E.2d 490.

■ We find that the trial court did not err in excluding exhibits numbered 110, 111, and 112. Whether the O.T.C. knew that the placement of bridge pillars on the westbound area of exit 10 would constitute a hazardous condition would needlessly confuse the issue of whether the O.T.C. knew of a hazardous condition on the eastbound exit. There is no evidence in the record that the O.T.C. received notice from Greiner or anyone else about a dangerous condition at the eastbound exit where the accident occurred. The letters written by Greiner to the O.T.C. do not state that all bridge pillars are inherently dangerous or that their placement anywhere on the highway would constitute a dangerous condition. Instead, Greiner's communication refers to

the westbound exit 10; no reference is made to the eastbound exit 10. Admission of such evidence would unfairly prejudice the O.T.C.

 ■ Evidence of former accidents may be admitted to show knowledge of a defective condition if the previous accidents and instrument which caused the danger were in a substantially similar circumstance or condition as the present accident. *Jaffe v. Powell* (1929), 121 Ohio St. 355, 169 N.E.2d 31; *Cottman v. Federman* (1942), 71 Ohio App. 89, 25 O.O. 435, 47 N.E.2d 1009. In his proffer to the trial court, counsel for appellants states generally that the eastbound and westbound exit configurations are substantially similar but fails to specify in what way they are substantially similar. A review of the record reveals that the designs of each exit were not substantially similar but in fact were quite different from each other. The evidence reveals a difference in distance at each location between the highway and the bridge pillar. At the eastbound exit 10 location, the bridge pillar rests twenty-one feet from the road whereas at the westbound location the bridge pillar would have been placed ten feet from the road. We also note that pertinent portions of the correspondence between Greiner and the O.T.C. were read into evidence.

Therefore, we find that the trial court did not abuse its discretion in excluding exhibits numbered 110, 111, and 112.

Accordingly, appellants' first assignment of error is overruled.

## II

Appellants' second assignment of error states[1]:

"The trial court erroneously excluded crucial evidence offered by plaintiffs. "* * *

"C. The trial court erred when it refused to allow plaintiffs to obtain an admission from defendant's own expert that excessive speed was not a cause of this accident.

"D. The trial court erred when it excluded the exhibit in which Greiner recommended the installation of impact attenuators at bridge pillars."

Joe Wade Kent, O.T.C.'s expert, testified that in his reconstruction of the accident he assumed that the speed of Ray's truck at the onset of the jackknife was about thirty to thirty-five m.p.h. He stated this during his deposition.

In their cross-examination of Kent, the Deffinbaughs posed the following questions:

---

1. Appellants have withdrawn assignments of error numbers IIA, B and E.

"Q. Am I correct that you do not believe that excessive speed was a cause of this accident?

"MR. BARNHOUSE: Objection.

"THE COURT: The objection is sustained.

"BY MR. SCHULMAN:

"Q. Am I correct that you are not of the opinion that excessive speed was a cause of this accident?

"MR. BARNHOUSE: Objection.

"THE COURT: The objection is sustained.

"BY MR. SCHULMAN:

"Q. Do you have any information that the speed Ray Deffinbaugh was traveling at the time he lost control was excessive in terms of the conditions at the time?

"MR. BARNHOUSE: Objection.

"THE COURT: The objection is sustained."

The Deffinbaughs assert that the trial court abused its discretion by precluding them from obtaining an admission from Kent that excessive speed was not a cause of the accident. They contend that all the evidence contradicted the view that excessive speed was the cause of the accident and that Kent had admitted the same in his deposition.

■ While a layperson or expert may be qualified to give an opinion as to the speed at which a vehicle is travelling, a witness is not competent to determine whether a given speed was fair, reasonable or proper since the reasonableness of the rate of speed is a question for the jury. *Tyler v. Hocking Valley Ry. Co.* (1926), 28 Ohio App. 88, 162 N.E. 623.

A review of Kent's deposition indicates that he could not state whether or not excessive speed was the cause of the accident. Such a line of inquiry was properly addressed by the jury with respect to whether Ray was driving reasonably under the circumstances. Therefore, we do not find that the trial court abused its discretion by excluding such an "admission."

The Deffinbaughs also maintain that the trial court abused its discretion by excluding an exhibit in which Greiner recommended in 1974 that impact attenuators or crash cushions be installed at bridge pillars. The Deffinbaughs contend that the placement of such cushions at the bridge piers would have prevented Ray's injuries.

■ We find that the trial court did not abuse its discretion when it excluded this document. There is no indication that the recommendation

applied to the eastbound exit 10.  Moreover, Wilber Nelson, a Greiner employee, after reading the relevant portion of the document into evidence, testified that eastbound exit 10 was not the type of situation to which the recommendation of crash cushions would apply.  Because this document was read into evidence, admission of such a document would have been mostly cumulative. *Price v. Cleveland Clinic Found.* (1986), 33 Ohio App.3d 301, 307, 515 N.E.2d 931, 937.  We find that the trial court properly excluded such documents under Evid.R. 401 and 403.

Therefore, appellants' second assignment of error is overruled.

### III

Appellants' third assignment of error states:

"The trial court erred when it admitted defendant's prejudicial computer simulations that were based on assumptions that were not in evidence."

■ Joe Kent, O.T.C.'s expert with respect to accident reconstruction, prepared two computer generated simulations, the printouts of which were admitted into evidence.

The Deffinbaughs assert that the trial court erred by admitting such evidence because it was based on assumptions not in evidence.  They also contend that the O.T.C. did not demonstrate an adequate foundation for the reliability of Kent's computer simulations.

It appears that the courts of the state of Ohio have not considered the admissibility of computer simulation for purposes of accident reconstruction. When confronted with a newly applied scientific principle, the Supreme Court of Ohio has endorsed a flexible standard in accord with our Rules of Evidence. *State v. Williams* (1983), 4 Ohio St.3d 53, 4 OBR 144, 446 N.E.2d 444.  In *Williams*, the Supreme Court of Ohio stated:

"We believe the Rules of Evidence establish adequate preconditions for admissibility of expert testimony, and we leave to the discretion of the state's judiciary, on a case by case basis, to decide whether the questioned testimony is relevant and will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* at 53, 4 OBR at 144, 446 N.E.2d at 444.

Evid.R. 402 provides:

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio.  Evidence which is not relevant is not admissible."

The admissibility of scientific testimony is referred to specifically in Evid.R. 702, which provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

We find that the trial court properly admitted Kent's computer simulations. Kent's first computer simulation, Exhibit D, represents his opinion of how the accident occurred. It demonstrates that the tractor trailer, given its weight and size, traveling at thirty-five m.p.h., requires two hundred feet to reach full jackknife. Mr. Kent's second computer simulation established that if the accident occurred as plaintiff's expert claimed, then the trailer would have come to rest left of the through lanes and therefore not have struck the guardrail and bridge pier.

Kent, a professional engineer and expert in accident reconstruction, testified that the computer program he used was called the Engineering Dynamics Vehicle Trailer Systems Program, which offers an accurate depiction of the motion of the tractor trailer vehicle. Kent utilized known facts such as the weight of the trailer, its physical dimensions, and the surface friction coefficient to generate the computer simulation. While the actual speed at which Ray was travelling at the time of the accident is unknown, Kent based the estimated speed of thirty to thirty-five m.p.h. on the accident report of the state trooper. We believe that the computer simulation assisted the trier of fact to determine how the accident occurred. The record reveals that the plaintiffs knew through discovery that the computer simulations would be introduced at trial. Counsel for the plaintiffs was able to cross-examine Kent about his qualifications and the computer system.

Therefore, we find that the trial court properly admitted Kent's computer simulation.

Accordingly, appellants' third assignment of error is overruled.

## IV

Appellant's fourth assignment of error states[2]:

"The trial court erred in its application of the law and its instructions to the jury.

---

**2.** Appellants have withdrawn assignments of error IVB and C.

"A.  The trial court erred when it instructed the jury that it could find Ray Deffinbaugh to be negligent if it found that he was driving at an unreasonable rate of speed.

" * * *

"D.  The trial court erred in refusing to allow plaintiffs' claim for the value of the care they provided to their son.

"E.  The trial court erred in refusing to instruct the jury on loss of earnings as an element of damages."

The Deffinbaughs maintain that the trial court committed error by its instruction to the jury that it could find Ray Deffinbaugh negligent if it found that he was driving at an unreasonable rate of speed.

The trial court stated:

"Now, driver's duty.  Ohio Revised Code Section 4511.202 requires a driver of a motor vehicle on any highway must be in reasonable control of the motor vehicle.  Reasonable control means the control and care that a cautious, careful person would use under the circumstances.

"Speed.  Ohio Revised Code Section 4511.21(A) states that a driver must operate his motor vehicle at a reasonable or proper speed, neither too fast nor too slow, having due regard for the traffic, surface and width of the highway, and having due regard to all other conditions existing at the time, including weather conditions.

"In determining whether the speed of the driver was reasonable or proper, you must consider the permanent physical features at the scene, the hour of day or night, the extent of other traffic, the weather conditions existing at the time, the width and nature of the roadway and any other circumstances existing at the time at the scene.

"A rate of speed less than that fixed by statute for the Ohio Turnpike may, under certain circumstances, be unreasonable and improper.  Whether the rate of speed of Raymond V. Deffinbaugh's tractor trailer is found by you to be reasonable and proper in view of all of the surrounding conditions is for you, the jury, to determine, along with all other facts in this case."

The Deffinbaughs assert that the jury instruction was improper and prejudicial since there was no evidence that Ray was driving at an unreasonable rate of speed.  In considering the appropriateness of a jury instruction, the instructions as a whole must be reviewed.  *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 210, 24 O.O.3d 316, 317, 436 N.E.2d 1001, 1003.  No reversible error is committed so long as the law is clearly and fairly expressed to the jury and they are able to understand it as it applies to the facts in the

case at hand. *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App.3d 7, 16, 19 OBR 71, 81, 482 N.E.2d 955, 966.

■ The trial court's instruction is substantially similar to the first paragraph of R.C. 4511.21 with respect to reasonable and proper speed. This section pinpoints the fundamental requirement of the statute that one drive in a reasonable manner. *Fedj v. Klinkiewicz* (Oct. 25, 1979), Cuyahoga App. No. 39570, unreported.

■ The record reveals considerable testimony concerning the weather conditions at the time of the accident, Ray's estimated speed, the size of the throughway and exit, and the configuration of the roadway. It is the integrated totality of conditions existing at a given time and their mutual interactions that determines whether or not a particular speed is a reasonable speed. *State v. Dennke* (1974), 40 Ohio App.2d 194, 69 O.O.2d 187, 318 N.E.2d 395. Whether Ray was driving reasonably under the circumstances is a question for the trier of fact, the jury. *Tyler v. Hocking Valley Ry. Co., supra.*

Therefore, we find that the trial court was justified in giving the jury this charge because the reasonableness of the speed at which Ray drove the tractor trailer was in issue.

The assignments of error concerning damages are immaterial in light of the jury verdict in favor of the O.T.C. and our decision to affirm.

Appellants' final assignment of error lacks merit and is overruled.

Accordingly, we affirm the judgment of the trial court.

*Judgment affirmed.*

ANN MCMANAMON and PRYATEL, JJ., concur.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.