**Mary Jennifer RICHARDSON, et al., Appellants,**

v.

**STATE HIGHWAY & TRANSPORTATION COMMISSION, Respondent,**

**Robert M. Liston, Defendant Ad Litem, for Stacey Bailey, deceased, Respondent,**

**State of Missouri, Intervenor.**

No. 75421.

Supreme Court of Missouri, En Banc.

Oct. 26, 1993.

Rehearing Denied Nov. 23, 1993.

Andrew J. Gelbach, Warrensburg, for appellants.

Zachary T. Cartwright, Rich Tiemeyer, Jefferson City, for respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen King Mitchell, Barry Gilbert, Asst. Attys. Gen., Jefferson City, for intervenor.

Robert O. Jester, Sharon Kennedy, Kansas City, Kathleen A. Hauser, Jeffrey L. Hess, Asst. City Attys., Kansas City, for amicus curiae, City of Belton, City of Kansas City.

BENTON, Judge.

On January 17, 1990, Jennifer Richardson was driving her van westbound on State Route B through a rainstorm with her two children, Lucas and Andrew. Stacey Bailey was driving eastbound in her Mustang. The front end of the Richardson van collided with the passenger side of the Bailey vehicle, tearing the Mustang in half. Stacey Bailey died in the collision, and is represented by a defendant ad litem. Jennifer Richardson was seriously injured; her two children received minor injuries.

The jury assessed fault forty percent to the State Highway and Transportation Commission and sixty percent to Bailey. The jury returned $500,000 on the claim of Jennifer Richardson, $50,000 on the consortium claim of Greg Richardson, $10,000 for Lucas Richardson and $5,000 for Andrew Richardson. On the claims of Jennifer and Greg, judgment was limited to a total of $100,000 under § 537.610 RSMo Supp.1989. Because the validity of a statute is at issue, this Court has jurisdiction. *Mo. Const. Art. V, § 3.* The judgment is affirmed in part, reversed in part, and remanded.

## I.

The Richardsons contend § 537.610 RSMo Supp.1989 denies them equal protection, due process of law, and the right of trial by jury. *U.S. Const. amend. XIV; Mo. Const. Art. I, §§ 2, 10, 22(a).*

### A.

▮ A statute that neither touches a fundamental right nor involves a suspect classification will withstand an equal protection challenge if a rational basis for the legislative classification can be found. *Maran–Cooke, Inc. v. Purler Excavating, Inc.,* 585 S.W.2d 38, 41 (Mo. banc 1979); *Blaske v. Smith & Entzeroth, Inc.,* 821 S.W.2d 822, 829 (Mo. banc 1991). The Richardsons do not reference a fundamental right, nor a suspect classification.

▮ The challenged statute, § 537.610, does not violate equal protection, when it limits recovery to those injured by operation of motor vehicles or by the condition of public property, as opposed to other causes of injury. *Winston v. Reorganized School District R–2,* 636 S.W.2d 324, 328 (Mo. banc 1982). The *Winston* rationale applies with equal force to the statute's monetary cap. *Cf. id.* at 328 n. 3. The General Assembly has a rational basis to fear that full monetary responsibility for tort claims entails the risk of insolvency or intolerable tax burdens. *See id.* at 328. Restricting the amount recoverable—like limiting recovery to certain enumerated torts—allows for fiscal planning consonant with orderly stewardship of governmental funds, while permitting some victims to recover something. *Id.*

▮ The Richardsons claim that full recovery will not "bankrupt" Missouri governments. This argument is more properly directed to the General Assembly, which can balance the level of compensation of tort victims with the need to protect public funds. "[W]ithin constitutional limits, a sovereign may prescribe the terms and conditions under which it may be sued, and the decision to waive immunity, and to what extent it may be waived, lies within the legislature's purview." *Id.; Williams v. City of Kansas City,* 782 S.W.2d 64, 66 (Mo.banc 1990); *cf. Harrell v. Total Health Care Inc.,* 781 S.W.2d 58, 62 (Mo.banc 1989). The Richardsons' equal protection challenge is therefore denied.

### B.

▮ Due Process guarantees that a claimant receives whatever process is constitutionally mandated or permitted under the laws in effect at the time of the claim. *Findley v. City of Kansas City,* 782 S.W.2d 393, 398 (Mo. banc 1990). The Richardsons received all the process due them. Their suit is a product of legislative creation. "If the legislature has the constitutional power to create and abolish causes of action, the legislature also has the power to limit recovery." *Adams v. Children's Mercy Hospital,* 832 S.W.2d 898, 907 (Mo. banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 511, 121 L.Ed.2d 446 (1992); *cf. Winston,* 636 S.W.2d at 328. Point denied.

### C.

Finally, the Richardsons invoke the right of trial by jury. A jury's primary function is fact-finding, including the determination of damages. *Jaycox v. Brune*, 434 S.W.2d 539, 542–43 (Mo.1968). The jury here assessed liability and determined damages, thus fulfilling its constitutional task. *Adams*, 832 S.W.2d at 907.

The court's role is to apply the law to the facts. *Id.* Section 537.610 establishes the legal limits on the state's liability to the Richardsons. Because this section does not apply until after the jury has completed its task, § 537.610 does not infringe the right of a jury trial. *Id.* Point denied.

### II.

Greg and Jennifer Richardson next contend that the $100,000 cap should be applied separately, rather than in the aggregate as the trial court did. The Richardsons' interpretation allows Jennifer to recover $100,000 and Greg an additional $50,000, rather than the trial court awards of $90,-909.09 and $9,090.91 respectively. Greg's loss-of-consortium claim is derivative only, so that if Jennifer had no valid claim for personal injuries, Greg cannot recover for loss of consortium. *See Huff v. Trowbridge*, 439 S.W.2d 493, 498 (Mo.1969); *Teschner v. Physicians Radiology*, 761 S.W.2d 665, 667 (Mo. App.1988). Damages for loss of consortium are "compensatory damages" for which sovereign immunity is waived. *§ 537.600 RSMo 1986.*

Sections 537.600 and 537.610 are hardly paradigms of clarity. Section 537.610.2 provides that the liability of the state and its public entities on claims within the scope of § 537.600

> ... shall not exceed one million dollars for all claims arising out of a single accident or occurrence and shall not exceed one hundred thousand dollars for any one person in a single accident or occurrence ...

The Richardsons suggest this Court interpret the "any one person" language to include Greg Richardson separate from Jennifer, so each may recover up to $100,000.

The Richardsons, however, ignore the modifier "in a single accident." The whole phrase "any one person in a single accident" connects the claim to the accident by the use of the preposition "in." The logical meaning of "in" is "present." This phrase indicates that the statute limits to $100,000 all the claims, direct and derivative, arising from injuries to a single person physically present in the accident. One $100,000 cap applies to each person and all those deriving claims from this one person *in* the accident.

To the extent that § 537.610 is ambiguous, the alternative interpretation would multiply the sovereign's liability by the number of claimants—derivative and direct—each entitled to the full $100,000 cap (assuming the total claims are under $1 million). This interpretation violates the maxim that statutory provisions waiving sovereign immunity must be strictly construed. *Kanagawa v. State*, 685 S.W.2d 831, 834 (Mo. banc 1985); *Bartley v. Special School District of St. Louis County*, 649 S.W.2d 864, 869 (Mo. banc 1983); *Beiser v. Parkway School District*, 589 S.W.2d 277, 280 (Mo. banc 1979); *Charles v. Spradling*, 524 S.W.2d 820, 823 (Mo. banc 1975); *Kleban v. Morris*, 363 Mo. 7, 247 S.W.2d 832, 837 (1952). This maxim implements the goals of limiting the government's financial exposure while granting victims some compensation.

Another subsection of 537.610 supports aggregating the claims of Greg and Jennifer Richardson. Subsection 537.610.4 reduces all claims proportionately, if total claims exceed one million dollars. Under this subsection, if the cap applied separately, each derivative claim would reduce the recovery of direct claimants and provide multiple recoveries for victims with numerous derivative claims. Consistency and equity require that all claims, derivative and direct, arising from injuries to "one person in a single accident" are restricted to the $100,000 cap.

The Richardsons urge that the statute be interpreted as if in an ambiguous insurance contract, where spouses have separately recovered under similar *contract* provisions. *Cano v. Travelers Insurance Co.*, 656 S.W.2d 266 (Mo. banc 1983). This principle of insur-

ance law has no role in statutory interpretation. Point denied.

### III.

The State Highway and Transportation Commission asserts that the trial court committed prejudicial error by: (a) admitting evidence of three other accidents in the same vicinity; (b) failing to grant a mistrial when counsel for defendant ad litem allegedly injected his personal knowledge into closing arguments; and (c) refusing to admit into evidence computer simulations of the accident.

### A.

■■■■ Trial courts have wide discretion on issues of admission of evidence of similar occurrences. *Pierce v. Platte–Clay Electric Co-op., Inc.,* 769 S.W.2d 769, 774 (Mo. banc 1989). This Court's review is limited to whether the trial court determined that the evidence was relevant and that the occurrences bore sufficient resemblance to the injury-causing incident, while weighing the possibility of undue prejudice and confusion of issues. *Id.* Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable people can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Anglim v. Missouri Pacific Railroad Co.,* 832 S.W.2d 298, 303 (Mo. banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992).

The Commission first mentioned the overall safety of Route B. In opening argument, the Commission stated that thousands of drivers safely pass this stretch of road daily. The Commission also introduced evidence that this part of Route B was safe. It is equally relevant for the other parties to introduce evidence of accidents in the vicinity. In addition, previous similar accidents may be relevant to whether the Commission had actual or constructive notice of the dangerous condition, which is a possible basis for liability under § 537.600.2.

■■■■ The trial judge explicitly considered these factors as opening the door to evidence of accidents that occurred in the vicinity. Of the forty-plus accidents that had occurred on Route B, the judge limited evidence to only three. Though reasonable people may disagree as to which, if any, accidents should have been admitted, the court did not abuse its discretion. Point denied.

### B.

■■■■ In closing argument, the attorney for the defendant ad litem attempted to explain, beyond the record, one of the earlier accidents:

> ... they hit right in here (indicating), and she crossed the centerline. I was in that matter. I know what happened there. Mr. Roark [Commission Attorney] doesn't.

The trial court sustained the Commission's objection and instructed the jury to disregard the statements of counsel, but the court denied a motion for mistrial. Determining the prejudicial effect of final argument and the necessity of the drastic remedy of mistrial is in the sound discretion of the trial court, whose judgment will not be disturbed unless there was a manifest abuse of discretion. *Gathright v. Pendegraft,* 433 S.W.2d 299, 306–07 (Mo.1968); *see also, Hoover's Dairy, Inc. v. Mid–America Dairymen,* 700 S.W.2d 426, 434 (Mo. banc 1985); *Pierce,* 769 S.W.2d at 778. Trial courts are clearly better positioned to determine the prejudicial effect and appropriate remedy for improper closing arguments. *Graves v. May Department Store Co.,* 153 S.W.2d 778, 785 (Mo.App.1941).

■■■■ Counsel's comment responded to pictures and events already in evidence and did not directly address the Richardsons' accident. The jury was instructed to ignore counsel's statements from personal knowledge. The statement was not so prejudicial so as to clearly warrant a mistrial. Point denied.

### C.

The Commission attempted to introduce, over the other parties' objections, a Simulation Model of Automobile Collision (SMAC) to show that the Bailey vehicle could

not have hydroplaned as the Richardsons alleged. The trial court conducted a hearing in chambers with the Commission's expert about the origins and bases of the simulation. After an extensive offer of proof, the court denied admission of the SMAC.

The Commission poses the issue as a landmark test on the admissibility of computer simulations as evidence in Missouri. In fact, the rules are clear on the admissibility of experimental evidence. Experimental evidence is admissible only if the experiment is made under substantially similar conditions to those at the time of the accident, although the conditions need not be identical. *Blevins v. Cushman Motors*, 551 S.W.2d 602, 610 (Mo. banc 1977); *Anglim*, 832 S.W.2d at 308. Other jurisdictions have permitted the use of computer simulations like SMAC. *Schaeffer v. General Motors Corp.*, 372 Mass. 171, 360 N.E.2d 1062, 1067 (1976); *Diffinbaugh v. Ohio Turnpike Comm.*, 67 Ohio App.3d 692, 588 N.E.2d 189, 193–94 (8 Dist.1990).

In this case, the trial court was concerned that many of the basic facts underlying the simulation were not known or reasonably certain, but rather "variables." The trial court was also mindful of the opposing parties' lack of notice of the simulation results until the last business day before trial, and the consequent limit on their ability to cross-examine. At the same time, the Commission did present significant testimony from the expert who conducted the simulation. The court did not abuse its discretion. Point denied.

## IV.

The trial court assessed costs against defendant, Highway and Transportation Commission. Absent statutory authority, costs cannot be recovered in state courts from the state of Missouri or its agencies or officials. *State ex rel. Independence School District v. Jones*, 653 S.W.2d 178, 191 (Mo. banc 1983); *Canteen Corp. v. Goldberg*, 592 S.W.2d 754, 757 (Mo. banc 1980); *State ex inf. Ashcroft v. Riley*, 590 S.W.2d 903, 907 (Mo. banc 1980); *Labor's Education and Political Club v. Danforth*, 561 S.W.2d 339, 350 (Mo. banc 1978); *Automagic Vendors, Inc. v. Morris*, 386 S.W.2d 897, 900 (Mo. banc 1965);

*Murphy v. Limpp*, 347 Mo. 249, 147 S.W.2d 420, 423 (1940); *Nicolai v. State*, 622 S.W.2d 764 (Mo.App.1981); *Anheuser–Busch v. Missouri Commission on Human Rights*, 682 S.W.2d 828, 834 (Mo.App.1984).

The Richardsons contend that the statute waiving sovereign immunity authorizes awarding costs against the Commission. Section 537.600.2 provides that its express waivers as to dangerous conditions and motor vehicles are "absolute waivers of sovereign immunity in all cases ...".

Waivers of sovereign immunity are, however, strictly construed. *Kanagawa*, 685 S.W.2d at 834; *Bartley*, 649 S.W.2d at 869; *Beiser*, 589 S.W.2d at 280; *Charles*, 524 S.W.2d at 823; *Kleban*, 247 S.W.2d at 837. This accords with the general prohibition of assessing costs against the state. When the General Assembly waives immunity regarding costs, it does so explicitly: for criminal costs, § 550.020 RSMo 1986; or for unjustified positions by state agencies in contested administrative cases, § 536.087 RSMo Supp. 1989. The legislature has enacted several laws about costs in civil cases, none of which authorize awarding costs against the sovereign. *Chap. 514 RSMo.* Section 537.600 contains no express waiver of sovereign immunity as to costs. The trial court erred in assessing costs against the Commission.

## V.

The judgment of the circuit court is affirmed in part, reversed in part, and the case remanded for proceedings consistent with this opinion.

COVINGTON, C.J., and THOMAS, LIMBAUGH and ROBERTSON, JJ., concur.

PRICE, J., concurs in result.

HOLSTEIN, J., concurs in result in separate opinion filed.

HOLSTEIN, Judge, concurring in result.

The majority is mistaken in its statement that plaintiffs' cause of action is a product of legislative creation. The plaintiffs' action is unquestionably a common law cause of ac-

tion. In addition, such cause of action is rooted in a fundamental right recognized by our state constitution.

If any aspect of this case is a legislative creation, it is not the plaintiffs' cause of action for negligence, but the defense of sovereign immunity. Whether the doctrine of governmental tort immunity is part of the common law of Missouri is debatable. The origins of the doctrine are shrouded in the mists of time. Missouri adopted the English common law as it existed in the year 1607. § 1.010, RSMo 1986. The first reported case in which the doctrine of sovereign immunity was applied was *Russell v. Men of Devon*, 2 T.R. 667, 100 Eng.Rep. 359 (1788). That case purports to rely on "Brooke's Abridgments," apparently published in 1573. The accuracy of the authority for the doctrine is suspect.

Even assuming the doctrine of sovereign immunity was created by the pre–1607 cases, the common law has never been static. By adopting the common law, we have adopted a system of "elementary rules and general judicial declarations of principles which are continually expanding with the progress of society, adapting themselves to the gradual changes of trade, commerce, arts, inventions, and the exigencies and usages of the country." *State ex rel. Schlueter Mfg. Co. v. Beck*, 337 Mo. 839, 847, 85 S.W.2d 1026, 1029–30 (banc 1935). The principle that a rule of law will not be expanded beyond the reasons justifying its adoption has given the common law a dynamic quality. While the common law is constant, it is not, and has never been, inflexible. Thus, by 1977, this Court, along with twenty-nine other states and the District of Columbia, following general common law principles, rejected sovereign tort immunity. *Jones v. State Highway Comm'n*, 557 S.W.2d 225, 227 (Mo. banc 1977).

Regardless of when the courts of England originally recognized a doctrine of sovereign immunity, the foundations of the doctrine were never supported by sound reason. The most frequent justification for the doctrine of sovereign immunity was that "the king can do no wrong." In an enlightened democratic society which has in the last fifty years wit-nessed the most outrageous inhumanity committed by sovereigns, such statement can only be considered a laughable anachronism. The other justification is the one alluded to by the majority in its determination that a "rational basis" exists for the statute. This rationale is often referred to as that of "public inconvenience." It holds that it is preferable for innocent and injured parties to bear the burdens of disability and impoverishment than for the government, whose culpable employees inflicted the damage, to bear a risk. Where risk pooling through insurance or otherwise is available, the potential risk to the public coffers is minimal. *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 596, 305 A.2d 877, 883 (1973). As of the time of the adoption of §§ 537.600 and 537.610, RSMo 1986, the reasons for sovereign tort immunity had been thoroughly discredited. Thus, the Missouri courts at that point in time no longer recognized the vitality of the doctrine of sovereign immunity.

The plaintiff's right of action descends from the common law which, worded as simply as possible, holds that one who acts negligently must pay for damages arising from the wrong. The question becomes whether the Richardsons being denied a claim interferes with a fundamental right.

Not all fundamental rights are itemized in the United States Constitution. Our state constitution speaks eloquently regarding what the citizens of this state consider fundamental:

[A]ll persons have a natural right to life, liberty and the pursuit of happiness and *the enjoyment of the gains of their own industry* ... that to give security to these things is the principle office of government, and that when government does not confer this security, it fails in its chief design. (emphasis added.)

*Mo. Const. art. I, § 2.* When a person is deprived of the right to future employment or is denied the enjoyment of otherwise good health due directly to the negligence of public officials, the government action involved has denied the injured person "the pursuit of happiness and the enjoyment of the gains of their own industry." In addition, the consti-

tution continues regarding the role of the courts in such matters:

> That the courts of justice shall be open to every person, and **certain remedy afforded for every injury to person,** property or character, and that right and justice shall be administered without sale, denial or delay. (emphasis added.)

*Mo. Const. art. I, § 14.* To hold that the legislature may deny a judicial remedy to a person who, through the misconduct of a public official, has been denied the right to the enjoyment of the gains of their own industry, is to reduce the above provisions of the constitution to quaint 19th century rhetoric.

In *Adams v. Children's Mercy Hospital,* 832 S.W.2d 898 (Mo. banc 1992), we held that caps on *noneconomic* damages did not violate the "certain remedy" provisions of the constitution. However, the state here is not merely placing a cap on noneconomic damages, the cap placed here is clearly on economic damages. Thus, the holding in *Adams* should not be an obstacle to breathing meaning into the above provisions of the constitution.

Neither does *Winston v. Reorganized School Dist. R–2,* 636 S.W.2d 324 (Mo. banc 1982), relied on by the majority, create an impediment to giving force to Mo. Const. art. I, §§ 2 and 14. In *Winston,* the Court concluded that there was no suspect classification. *Winston* did not consider whether Mo. Const. art. I, §§ 2 and 14, created a fundamental right to be free from disabling injury inflicted by a governmental employee.

This Court recently held in *Heins Implement Co. v. Mo. Hwy. & Transportation Comm'n, et al.,* 859 S.W.2d 681 (Mo. banc 1993), that a negligently constructed bridge which flooded the property of an adjacent landowner subjected the state to damages caused by the flooding. It is paradoxical to say that one whose land is damaged by the negligent conduct of the public officials has a fundamental right to recover for such damages, but one who incurs medical expenses, loss of employment and other economic damages due to negligent conduct by public officials does not have a fundamental right to recover for such losses.

I believe that the plaintiffs' right to recover their economic loss for a wrong perpetrated by public officials in the course of their duties is a fundamental right found in the Missouri Constitution. For that reason, I am unwilling to join in the majority's implicit conclusion that this statute does not touch on a fundamental right. When the legislature chooses to grant the state government immunity from tort liability for economic damages, the statute should be subject to strict scrutiny and require a compelling state interest to support its constitutionality. At the same time, it is possible that economic interests of the state may prove to be compelling under the circumstances of a particular case. However, I would make clear that the sovereign granting itself unreasonably broad immunity from liability for economic damages would be an exercise of gross governmental hubris which, I believe, the constitution will not tolerate.

The plaintiffs in this case have not clearly segregated the economic from noneconomic damages assessed by the jury. The state may limit liability for noneconomic loss. In addition, the arguments I have noted based on the provisions of Missouri Constitution article I, §§ 2 and 14, were not adequately raised in the trial court or in the brief. For those reasons, I concur in the result of the majority opinion, but with the reservations stated above.