DECISION. *Page 2 
{¶ 1} In 2007, a jury found defendant-appellant Anthony Gerike guilty on four counts of aggravated vehicular homicide. Two counts fell under RC. 2903.06(A)(1), and the other two counts fell under R.C. 2903.06(A)(2). Gerike had driven his automobile across the centerline and struck cyclists Amy Gehring and Terry Walker head-on. Gehring and Walker had been cycling in the opposite direction from Gerike when his car had drifted across the centerline, into the lane of oncoming traffic. The oncoming traffic had managed to dodge Gerike's vehicle, but he continued to drift to the left and eventually struck the cyclists. Gerike continued to drive until he eventually crashed into another vehicle as he drove the wrong way. Gehring and Walker had been killed instantly.
 {¶ 2} In this appeal, Gerike argues that the trial court erred in reopening a motion to suppress blood-alcohol results indicating that Gerike had been driving under the influence of alcohol and drugs. The court had originally suppressed the first blood test of two that had been taken, but on reopening the suppression motion, it admitted both tests. Gerike argues that it was error to reopen the suppression motion, to limit the scope of cross-examination during the rehearing, to admit a computer-animated reenactment of the crash, and to sentence Gerike to a 16-year term of incarceration (the sentences for the R.C. 2903.06[A][1] convictions were concurrent with the sentences for the RC. 2903.06
[A][2] convictions).
 {¶ 3} Because Gerike's assignments of error are meritless, we affirm the findings of guilt, but we sua sponte vacate the concurrent sentences for the R.C. 2903.06(A)(2) convictions because, under these facts, aggravated vehicular homicide under R.C. 2903.06(A)(2) was an allied offense of similar import to aggravated vehicular *Page 3 
homicide under R.C. 2903.06(A)(1). But Gerike's 16-year sentence remains the same despite this modification.
 I. A Horrific yet Avoidable Crash {¶ 4} The facts of this case are simple. Warren Porter testified that before the car crash he had been in his backyard when he heard a loud noise in front of his house. Porter ran to investigate the noise and saw Gerike urinating on his bushes. Porter told Gerike to explain or he would call the police. Gerike sped away in his car.
 {¶ 5} Minutes later, Gehring and Walker were riding their bicycles with the westbound flow of traffic when Gerike, who had been traveling in the eastbound lane, crossed the centerline and drove into the oncoming westbound traffic and struck and killed the cyclists.
 {¶ 6} Gerike survived the crash. Responding paramedics found Gerike sitting under a tree in a yard, and they testified that Gerike had seemed disoriented and confused but that they did not smell any alcohol.
 {¶ 7} Gerike was taken to the hospital, and his blood was drawn two times by Marilyn Kugler. Kugler testified that Gerike had told her that on the previous night he had been drinking, and that, because he did not remember the accident, he must have fallen asleep at the wheel. Kugler also testified that at 12:15 p.m. she drew blood for medical purposes and that she then she drew blood again at 1:11 p.m. at the request of Deputy Jack Losekamp.
 {¶ 8} Losekamp spoke to Gerike and could smell alcohol on his breath; Gerike also told Losekamp that he had stopped drinking around 4:30 a.m. *Page 4 
 {¶ 9} The first blood test indicated that Gerike was over the .08 limit of ethyl alcohol in his blood, whereas the second blood test indicated that Gerike was slightly below the limit; both tests indicated the presence of cocaine and marijuana.
 II. The Suppression Motion and Hearings {¶ 10} Gerike moved to suppress the results of the blood tests. The trial court originally suppressed the results of the first blood test but admitted the results of the second test. The court found that the state had failed to show that the hospital lab had a permit to withdraw blood. The state then contended that the trial court had relied on bad law when it suppressed the results of the first blood test because the person withdrawing the blood (and not the withdrawing lab) is required to have a permit to withdraw blood; and so the state moved to reopen the suppression motion so that the court could revisit its ruling on the suppressed blood-test results and rehear the matter. The court granted the motion to reopen the suppression motion, reconsidered its original ruling, and then found that both blood tests were admissible.
 {¶ 11} Gerike argues on appeal that there is no procedure for reopening a suppression-motion hearing; rather, he contends, the proper procedure under Crim. R. 12(K) is to appeal an adverse ruling on a motion to suppress. We are not persuaded. Although waiver is not an issue in this case, its underlying principle is implicated here. Generally, the failure to timely advise the trial court of error — by objection or otherwise — results in a waiver of the issue on appeal. The waiver doctrine ensures that in the first instance the trial court is afforded an opportunity to avoid or correct error and gives it the opportunity to modify its decision or to order a more complete development of the record.[1] That is exactly what happened here. The trial court reheard *Page 5 
certain issues and corrected its mistake; the decision to rehear issues was within the trial court's discretion, [2] and its error correction was not an abuse of that discretion — in fact under these circumstances it might have been an abuse of discretion for the trial court not to have corrected itself after its error had been raised by the state.
 {¶ 12} Why should the state appeal an adverse ruling when the trial court has discretion to correct its own error regarding that ruling? Gerike's argument that the state should have been required to appeal the adverse ruling works against the longstanding tenet of judicial economy, and we overrule this assignment of error.
 III. The Scope of Cross-Examination {¶ 13} Gerike also argues that the trial court violated his due-process rights and his right to a fair trial in limiting the scope of cross-examination by permitting the state to show compliance with the Ohio Department of Health rules and regulations, but not permitting the defense a full cross-examination.
 {¶ 14} Trial courts are entrusted with broad discretion to impose reasonable limits on the extent of cross-examination.[3] The purpose of the reopened suppression hearing was limited to evidence about whether the lab had met the Department of Health rules and regulations: the qualifications of the testing lab and whether the lab had retained the blood samples for the appropriate amount of time. Throughout the hearing, Gerike repeatedly raised issues that the trial court deemed to be outside the scope of the hearing. For instance, Gerike's counsel attempted to ask questions about the refrigeration of blood samples and the chain of custody. But these issues were not specifically raised in Gerike's suppression motion and had not been raised *Page 6 
in the first suppression hearing, and therefore they were immaterial to and outside the scope of the second suppression hearing. The trial court recognized a possible mistake, held another hearing to hash out the legal issues, and limited the scope of the rehearing to material issues relevant to the disposition of the suppression motion. We cannot say that that the trial court abused its discretion when it limited the scope of Gerike's cross-examination; the issues of chain of custody and whether the blood samples had been refrigerated were outside the scope of the rehearing.
 IV. Computer-Animated Reenactment {¶ 15} Gerike also argues that the trial court erred in admitting a computer-aided simulation of the accident. The admissibility of relevant evidence is a determination left to the trial court's discretion.[4]
Many courts have upheld the replay of computer reenactments for the jury.[5] The computer-assisted simulation in this case accurately depicted the accident as described in the foundation that had been laid for the video's admission. Even if parts of the simulation or reenactment had been inconsistent with any part of the trial testimony, such claims would have gone to the weight to be given the simulation or reenactment by the jury rather than its admissibility.[6] We hold that the trial court did not abuse its discretion in admitting the computer-assisted reenactment.
 V. Excessive Sentences? {¶ 16} Gerike last argues that his sentence of 16 years' incarceration was excessive. He is wrong. Trial courts have full discretion to impose a prison sentence *Page 7 
within the statutory range and are no longer required to make findings or to give reasons for imposing more than the minimum sentence.[7]
Gerike's sentence was within the statutory range, and we are convinced that his sentence was not unduly harsh. We therefore overrule his final assignment of error. But we sua sponte vacate his concurrent sentences for aggravated vehicular homicide under R.C. 2903.06(A)(2).
 {¶ 17} Two of Gerike's convictions were chargeable under R.C. 2903.06(A)(1) as first-degree felonies for causing the deaths of Amy Gehring and Terry Walker while under the influence of drugs or alcohol. The other two counts of aggravated vehicular homicide were chargeable under R.C. 2903.06(A)(2) as second-degree felonies for recklessly causing the deaths of Amy Gehring and Terry Walker. In one act, Gerike killed two people — not four — and accordingly he could only have been convicted and sentenced for two aggravated vehicular homicides (one for each victim). A person who drives drunk is reckless.[8]
 {¶ 18} Gerike could not have been convicted and sentenced under both R.C. 2903.06(A)(1) and R.C. 2903.06(A)(2); the trial court erred in so doing. And though we modify the technicalities of Gerike's sentence by vacating his concurrent sentences under R.C. 2903.06(A)(2), his 16-year term of incarceration remains intact. Subject to this modification, we affirm the trial court's judgment.
Judgment affirmed as modified.
SUNDERMANN, P.J., and HENDON, J., concur.
[1] Fahlbush v. Crum-Jones, 176 Ohio App.3d 328, 2008-Ohio-1953, ___N.E.2d___, at ¶ 14.
[2] See State v. Monaghan, 1st Dist. No. C-040655,2005-Ohio-4051, at ¶ 7.
[3] State v. McIntosh (2001), 145 Ohio App.3d 567, 578,763 N.E.2d 704.
[4] State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus; Columbus v. Taylor (1988), 39 Ohio St.3d 162,529 N.E.2d 1382.
[5] State v. Geneva (1996), 5th Dist. No. 95AP030011;State v. Clark (1995), 101 Ohio App.3d 389, 655 N.E.2d 795;Deffinbaugh v. Ohio Turnpike Comm. (1990), 67 Ohio App.3d 692,588 N.E.2d 189.
[6] Geneva, supra.
[7] State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470.
[8] See State v. Hundley, 1st Dist. No. C-060374,2007-Ohio-3556 (Painter, P.J., dissenting). *Page 1