OPINION
{¶ 1} This is an appeal from a summary judgment for the defendants on their statute of limitations defense.
 {¶ 2} In 2001 Plaintiff, Barbara Jett, was employed by Delphi Chassis ("Delphi") at its factory in Dayton. *Page 2 
Defendant, Interim Healthcare of Dayton, Inc. ("Interim Healthcare"), is an independent contractor that by agreement with Delphi provided medical services to Delphi's employees at the factory. Defendant, Cheryl A. Fleck, is a registered nurse employed by Interim Healthcare who was assigned to work in the medical department at Delphi's factory.
 {¶ 3} On June 4, 2001, Plaintiff Jett, who was working the second shift at Delphi's factory, presented at the medical department to obtain custom-fitted earplugs. Such plugs are formed by inserting a clay-like substance into the user's ear canal. Before insertion, several drops of a liquid hardening agent must be added to the substance.
 {¶ 4} Nurse Fleck prepared the clay-like substance, kneading it with her hands, and inserted it into Jett's ear canal. However, Nurse Fleck failed to add the hardening agent. In a complaint in the action she subsequently filed against Delphi, Interim Healthcare, and Nurse Fleck, Jett alleged that as a result of Nurse Fleck's negligent act or omission the substance partially liquified after insertion in her ear canal, proximately causing injuries to her ears, hearing, and balance. Jett's spouse, James Jett, alleged a loss of consortium arising from those injuries.
 {¶ 5} Jett filed her complaint on June 4, 2003. The *Page 3 
action was voluntarily dismissed and was refiled on January 13, 2006. Defendants Interim Healthcare and Jett filed an answer that pleaded the affirmative defense of statute of limitations.
 {¶ 6} Interim Healthcare and Nurse Fleck moved for summary judgment on their statute of limitations defense. They argued that the claim for relief in the action Jett filed is a "medical claim" governed by the one-year statute of limitations, and that the action Jett first commenced in 2003 is barred because the cause on which the claim for relief was brought had accrued in 2001, more than one year before. Jett argued that her claim is instead a claim for personal injuries governed by the two-year statute of limitations, under which the action was timely filed.
 {¶ 7} After thoroughly analyzing the contentions of the parties and the record before it, the trial court found that Jett's action was brought on a medical claim and granted the motion for summary judgment the Defendants filed. Jett filed a timely notice of appeal.
ASSIGNMENT OF ERROR
 {¶ 8} "THE TRIAL COURT ERRED IN APPLYING THE ONE-YEAR MEDICAL CLAIM STATUTE OF LIMITATIONS OF FORMER R.C. _ 2305.11 INSTEAD OF THE TWO-YEAR NEGLIGENCE STATUTE OF LIMITATIONS OF *Page 4 
R.C. _ 2305.10, AND THUS ERRED IN GRANTING SUMMARY JUDGMENT IN APPELLEES' FAVOR."
 {¶ 9} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ. R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. Morris v. First NationalBank Trust Co. (1970), 21 Ohio St.2d 25. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. Osborne v.Lyles (1992), 63 Ohio St.3d 326. Further, the issues of law involved are reviewed de novo. Nilavar v. Osborn (1998), 127 Ohio App.3d 1.
 {¶ 10} Jett has moved to strike a copy of her deposition that Fleck attached to her brief on appeal, because the deposition was not filed in the trial court's proceedings. We may not add or rely on evidentiary materials that were not before the trial court. State v. Ishmail (1978), *Page 5 
54 Ohio St.2d 402. Jett's motion is granted.
 {¶ 11} The statute of limitations governing medical claims that was in effect in 2001 when the allegedly negligent acts or omissions of Nurse Fleck occurred, R.C. 2305.11(B), provided that an action on a medical claim must be commenced within one year after the cause of action accrued. R.C. 2305.11(D)(3), also in effect at that time, defined a "medical claim" as:
 {¶ 12} "[A]ny claim that is asserted in any civil action against a physician, podiatrist, or hospital, against any employee or agent of a physician, podiatrist, or hospital, or against a registered nurse or physical therapist, and that arises out of the medical diagnosis, care, or treatment of any person. `Medical claim' includes derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person."
 {¶ 13} R.C. 2305.10 provides that an action for bodily injury shall be brought within two years after the cause thereof accrues. The shorter statute of limitations on medical claims alleging malpractice as a proximate cause of bodily injuries operates as an exception to the two-year rule. Whether an action for bodily injury is in fact brought on a medical claim presents two issues. The first is whether the *Page 6 
person or entity against which the action is brought is within the coverage of R.C. 2305.11(D)(3), which defines a medical claim. The second issue is whether the claim arises out of the medical diagnosis, care, or treatment of any person.
 {¶ 14} Interim Healthcare's potential liability derives from the alleged liability of its employee, Nurse Fleck, under the doctrine of respondeat superior. Jett concedes that Nurse Fleck, being a registered nurse, is a person within the coverage of R.C. 2305.11(D)(3). The further question, and the issue which this appeal presents, is whether Jett's claim for relief against Nurse Fleck is one that "arises out of the medical diagnosis, care, or treatment of any person."
 {¶ 15} Jett argues that the record before the trial court was insufficient to permit a finding that her claim against Nurse Fleck arose out of the medical diagnosis, care, or treatment of any person. Jett relies on Browning v. Burt (1993), 66 Ohio St.3d 544, 556-57, which held that medical diagnosis or treatment "are terms of art having a specific and particular meaning relating to the identification and alleviation of a physical or mental illness, disease, or defect." Jett contends that none of those conditions are shown by this record to have been the purpose of the earplugs for which she was fitted by Nurse Fleck. *Page 7 
 {¶ 16} In Browning, the Supreme Court distinguished a claim against a hospital for negligent credentialing of a physician from a medical claim alleging malpractice. While that particular distinction is not an issue in the present case, we are bound to apply the Browning definition of a medical claim to the facts before us. Defendants argue that the requirements of the Browning definition are shown by the purposes of the earplugs she requested to which Jett testified in her deposition. However, that deposition is not before us.
 {¶ 17} Civ. R. 56(C), governing motions for summary judgment, provides that "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of facts, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. . . ."
 {¶ 18} The complaint that Jett filed in commencing her action contains three claims for relief. The first claim for relief, alleging the liability of Nurse Fleck and Interim Healthcare, states:
 {¶ 19} "2. On or about June 4, 2001, and at all times *Page 8 
relevant hereto, Plaintiff, Barbara Jett was an employee of Delphi Chassis, working at the Needmore Road Plant location in Dayton, Ohio.
 {¶ 20} "3. At all times relevant, Defendant, Interim Healthcare was contracted by Delphi Chassis to provide various nursing, industrial, and related services to dispensary department at Delphi Chassis' location on Wisconsin Blvd in Dayton, Ohio. Included in these services was the assistance in preparation and providing plant employees with custom-fitted earplugs and other personal protective devices.
 {¶ 21} "* * *
 {¶ 22} "7. On or about June 4, 2001, Plaintiff, Barbara Jett, was in need of earplugs for use during her employment in the factory.
 {¶ 23} "8. Defendant, Interim Healthcare, and/or an employee thereof, was present for this effort, and was responsible for the preparation and fitting of Plaintiff, Barbara Jett's earplugs.
 {¶ 24} "9. The preparation of the earplugs required the use of a mixture to be placed in or near the Plaintiff's outer and/or inner ear, and the letting of said mixture to harden and form to the shape of the Plaintiff's ear opening.
 {¶ 25} "10. Said employee of Defendant, Interim *Page 9 
Healthcare, was negligent in preparing said mixture for the earplug. TO WIT: Defendant failed to include the hardening agent, and/or otherwise failed to use the proper mixture prior to inserting it into Plaintiff, Barbara Jett's ear, which resulted in a more liquid mixture (which did not harden) being inserted and/or otherwise poured into Plaintiff, Barbara Jett's ear."
 {¶ 26} In the third claim for relief, which alleged the liability of Delphi for the injuries Jett suffered, Jett's complaint alleged:
 {¶ 27} "19. On or about June 4, 2001 the Plaintiff, Barbara Jett, as part of her job duties as an employee of Defendant, Delphi Chassis Systems, Inc., was required by Defendant to work on machines which were loud, causing the need for her to wear earplugs and other similar personal protective equipment."
 {¶ 28} Jett's claim for relief against Delphi was settled. However, in granting summary judgment for Nurse Fleck and Interim Healthcare the trial court could rely on Jett's allegations in her claim for relief against Delphi because they are pleadings in the single "action" Jett commenced on her claims for relief against all three defendants. "It is generally held that where a party has alleged a matter of fact *Page 10 
in his pleadings, the pleadings are evidence against him as an admission of fact so alleged." Shifflet v. Thomson Newspapers (Ohio), Inc. (1982),69 Ohio St.2d 179, 187 (citation omitted). The court may consider such evidence for purposes of Civ. R. 56(C). Id.
 {¶ 29} Nurse Fleck testified that she is a registered nurse and has been since 1980. (Tr. 16). She holds several certificates, including one for occupational health and hearing conservation (Tr. 17) or "audiometrics", which she testified involves avoidance of hearing loss. (Tr. 21). She was trained for those purposes by physicians. (Tr. 22). She worked for Interim Healthcare at Delphi's medical department under the direct supervision of a senior nurse (Tr. 24) and under standing orders developed by a physician in Michigan. (Tr. 42).
 {¶ 30} Nurse Fleck testified that she learned to fit custom-fitted earplugs by observing other nurses perform that task. (Tr. 25, 27). She testified that when fitting earplugs she regularly uses an otoscope to examine the subject's ear canals for fluid before inserting the clay-like substance to form an earplug. (Tr. 57). Nurse Fleck further testified that when she fits earplugs, including those for Jett, Nurse Fleck performs her function as a nurse. (Tr. 30, 39, 54). *Page 11 
 {¶ 31} R.C. 4723.01 states:
 {¶ 32} "As used in this chapter:
 {¶ 33} "(A) `Registered nurse' means an individual who holds a current, valid license issued under this chapter that authorizes the practice of nursing as a registered nurse.
 {¶ 34} "(B) 'Practice of nursing as a registered nurse' means providing to individuals and groups nursing care requiring specialized knowledge, judgment, and skill derived from the principles of biological, physical, behavioral, social, and nursing sciences. Such nursing care includes:
 {¶ 35} "(1) Identifying patterns of human responses to actual or potential health problems amenable to a nursing regimen;
 {¶ 36} "(2) Executing a nursing regimen through the selection, performance, management, and evaluation of nursing actions;
 {¶ 37} "(3) Assessing health status for the purpose of providing nursing care;
 {¶ 38} "(4) Providing health counseling and health teaching;
 {¶ 39} "(5) Administering medications, treatments, and executing regimens authorized by an individual who is authorized to practice in this state and is acting within the *Page 12 
course of the individual's professional practice;
 {¶ 40} "(6) Teaching, administering, supervising, delegating, and evaluating nursing practice.
 {¶ 41} "(C) `Nursing regimen' may include preventative, restorative, and health-promotion activities.
 {¶ 42} "(D) `Assessing health status' means the collection of data through nursing assessment techniques, which may include interviews, observation, and physical evaluations for the purpose of providing nursing care."
 {¶ 43} On this record, reasonable minds could only find that Jett "needed" to have custom-fitted earplugs as "personal protective equipment" while she worked on loud machines, and that Nurse Fleck, a registered nurse, engaged in the practice of nursing when she provided or attempted to provide for that need by fitting Jett with earplugs for that purpose, thereby engaging in actions that constituted a "nursing regimen" in the selection and performance of a preventive and health-promotion activity. R.C. 4723.01(B)(1). Further, when she first examined Jett's ear canals for fluid by using an otoscope device, Nurse Fleck provided a service requiring specialized knowledge, judgment, and skill derived from principles of biological sciences in which she was trained. R.C. 4723.01(B). Therefore, reasonable minds could only find *Page 13 
that Nurse Fleck engaged in the practice of nursing as that is defined by R.C. 4723.01 when she attempted to provide Jett with custom-fitted earplugs.
 {¶ 44} The rule of Browning requires proof that the actor's conduct related to the identification and alleviation of a physical or mental illness, disease, or defect in order to constitute the basis of a medical claim. Reasonable minds could only find that the purpose of the service Nurse Fleck provided Jett was to create a device to protect Jett against injury to her hearing, which is a disease or defect, that in doing so Nurse Fleck engaged in a nursing specialty in which she was trained, and that she performed as a registered nurse.
 {¶ 45} Jett argues that Nurse Fleck's testimony that she acted as a nurse when she fitted Jett for earplugs is not determinative of whether Jett's action is on a "medical claim", because it is not in what capacity the actor perceived himself as rendering a professional service but how the recipient perceived the actor as rendering a service that should control. That rule was announced in Sarnovsky v. Snyder, Evans Anderson, Inc. (1997), 38 Ohio App.3d 33, in which the issue was whether a surgeon against whom a medical malpractice claim was brought had acted as a physician or as a dentist, which affected what expert opinion could be offered *Page 14 
on a malpractice claim. That is not a matter in issue in the present case, in which the issue is instead whether the action is brought on a medical claim. That is a question to be determined objectively, from the service that was performed. "The critical phrase, `arising out of the diagnosis, care, or treatment of any person', describes clinical assistance for a patient." Price v. Cleveland Clinic Foundation (1986),33 Ohio App.3d 301, 304. The service Nurse Fleck performed comfortably fits that definition. Jett has offered no evidence that she perceived the service in any different way.
 {¶ 46} Jett argues that she cannot be classified as a patient because she may have "needed" custom-fitted earplugs for some purpose other than to protect against a loss of hearing, such as, for example, for use while swimming. We are not persuaded that such a purpose would except Jett's claim from the definition of a medical claim in R.C. 2305.11(D)(3). In any event, it would not affect the nature of the service Nurse Fleck provided. Furthermore, on this record the contention is speculative. If that was Jett's purpose, it was her burden to offer evidence to prove it in order to preserve a genuine issue of material fact in relation to the proof in Nurse Fleck's deposition. Dresher v. Burt (1996), 75 Ohio St.3d 280. Indeed, the assertion is contradicted by the *Page 15 
inference reasonably drawn from Jett's pleading that she "needed" the earplugs to protect her sense of hearing.
 {¶ 47} Finally, Jett argues that her action is not barred because her employer, Delphi, had a motivation and self-interest in insuring compliance with OSHA regulations. Nurse Fleck testified that she is familiar with OSHA regulations and compliance, but there is no evidence that such compliance was the purpose of the services Nurse Fleck provided to Jett. Furthermore, the exception on which Jett relies applies only when in a case of this kind an employer requires an employee to submit to a medical examination or procedure. New YorkCentral Railroad Co. v. Wiler (1931), 124 Ohio St. 118. There is no evidence that Delphi required Jett to obtain earplugs.
 {¶ 48} No error is demonstrated in the trial court's order granting the motion for summary judgment that Nurse Fleck and Interim Healthcare filed on their statute of limitations defense. The assignment of error is overruled. The judgment of the trial court will be affirmed.
 BROGAN, J. and FAIN, J., concur. *Page 1